Alwina Meier, Respondent, *v.* Adolphus Meier, Appellant.

January 29, 1884.

Insurance — Liens — Voluntary Payments for Another. — Premiums of insurance voluntarily paid on the life of another can not, in the absence of any understanding, be recovered of the beneficiary; and the person so paying has no lien for such payments, upon the proceeds of the insurance collected by him as the agent of the beneficiary.

Appeal from the St. Louis Circuit Court, Barclay, J. *Affirmed.*

A. M. GARDNER, for the appellant: Although the premiums were voluntarily paid by the defendant, they were paid with the consent and knowledge of the beneficiary, who must account for the money so paid out to her use. — 2 Phill. on Ins., sects. 1909, 1911; *Spring* v. *Insurance Co.*, 8 Wheat. 268; *Moody* v. *Webster*, 3 Pick. 424; *Connecticut Insurance Co.* v. *Burroughs*, 34 Conn. 305. Having accepted the proceeds of the defendant's acts, the beneficiary is liable for disbursements made to secure the benefits of those acts. — *Reed* v. *Hibbard*, 6 Wis. 175; *Mundorf* v. *Wickersham*, 63 Pa. St. 87; *Baker* v. *Insurance Co.*, 43 N. Y. 283; Bliss on Ins. 297.

EBER PEACOCK, for the respondent: The payments were voluntary and created no charge on the fund. — *Valley Insurance Co.* v. *Burke*, 18 Rep.; Bliss on Ins., sect. 337.

BAKEWELL, J., delivered the opinion of the court.

Plaintiff alleges in her petition that defendant, as her agent, collected for her from the New York Life Insurance Company $3,000, which he refuses to pay to her.

Defendant, after a general denial, specially denies that he collected the sum named as agent of plaintiff. For a further answer defendant says, that the firm of Adolphus Meier & Co., of which defendant is a member, received from plaintiff a check of the New York Life Insurance Company, to her order and by her indorsed, which check represented the proceeds of a policy on the life of her husband; that the firm collected $2,837.58, the amount of the check, and holds the same, subject to charges and offsets, for the right owner. These charges are set out in an itemized account of insurance premiums paid from year to year, from the 29th of September, 1865, to September, 1881, inclusive, which with interest amounted to $1,575.26. The answer alleges that Thomas J. Meier, the husband of plaintiff, in 1852, insured his life in the New York Life Insurance Company, that neither he nor plaintiff could pay

the premiums, and that the firm of Adolphus Meier & Co. paid all the premiums, at the special instance and request of plaintiff. That, on the 26th of February, 1858, plaintiff agreed in writing with one Herman Meier that in consideration of the payment by him of the premiums upon said policy, the proceeds at the death of her husband should go, one-third to her, and two-thirds to her children by her husband Thomas J. Meier; that Herman Meier failed in business, and left the state in 1865, whereupon Adolphus Meier & Co. agreed to pay the premiums in the place of Herman Meier, according to his agreement with plaintiff, and that they have done so for seventeen years, and from that date to the death of the insured; that plaintiff has three children by her said husband, and is entitled to receive only one-third of the net proceeds of the policy; that Thomas J. and Herman Meier and defendant were brothers; that Herman Meier and defendant paid the premiums at the request of plaintiff, and to protect the interest of herself and children in the policy, and, by these means alone, the proceeds were saved to her and her children; and that, by the indorsement and delivery of the check to Adolphus Meier & Co., defendant intended to, and did, recognize their right to receive the proceeds of the check and distribute the same, after deducting what they had paid for premiums, according to the agreement aforesaid.

There was a replication as to the new matter.

The cause was tried without a jury, and there was a finding and judgment for plaintiff for $3,024.83, that is, for the whole amount received from the insurance company and interest.

Plaintiff introduced testimony tending to show that, upon the death of her husband, she went to the office of the insurance company with her brother-in-law, the defendant, where she signed certain papers which she did not understand, being ignorant of business and not able to read Eng-

lish. She went there with the understanding that she was to get the insurance money, and believes that one paper, on which she put her name, by the direction of the defendant, was a check. This check defendant put in his pocket with some words to the effect that it belonged to plaintiff. Afterwards, plaintiff demanded the insurance money of defendant, and defendant replied that the money was in his business, that it amounted to $3,000, and he would pay annual interest on this sum at 8 per cent; but that, if it went to a suit, he would demand to be reimbursed $1,500 for the premiums which he had paid. It was admitted that there were three children of Thomas J. Meier and plaintiff who have assigned to the plaintiff all interest in the proceeds of the policy, and who are all of age. The policy by its terms was payable to plaintiff on the death of her husband. Plaintiff believed that her husband had money in defendant's business, and that the premiums were paid out of that. She said, that, when defendant came to see her about the insurance money collected, she was willing he should have the money paid for premiums if he had paid it with his own money.

Defendant introduced the agreement between Herman Meier and plaintiff as stated in the answer. He testified that his brother Thomas, being unable to pay the premiums upon the policy in question, which was for the benefit of his wife, Herman Meier paid them under this agreement until he failed and left town in 1865; the policy and agreement than came into the hands of defendant; but he does not recollect what was said or from whom he got them. Defendant paid the premiums from that time on, because his brother Thomas could not. Thomas was constantly indebted to defendant for advances made by defendant to him and his family to help them along. These advances and all money paid to or for Thomas, including these premiums, were charged to Thomas on the books of Adolphus Meier

& Co., in a memorandum account. Defendant and his son were members of the firm of Adolphus Meier & Co. Thomas J. Meier was not a member of the firm. No member of the firm except defendant had anything to do with the payments. At the time of his death, Thomas owed defendant about $8,000, for the greater portion of which defendant held his note. The advances made to the family to keep it going, and the other charges against Thomas in the memorandum account on the books of Meier & Co., were to be settled at a later day. The account represented everything spent for the family. Thomas died insolvent, and having no property. Defendant had the policy in his possession from the time that Herman ceased to pay the premiums. He says he paid them because his brother was poor, and he thought the widow would be left poor with children, and he wanted to save the insurance. Plaintiff indorsed the check and delivered it to defendant, who collected the proceeds, $2,837.58. Afterwards, defendant saw his sister-in-law at her home in the country and his statement as to that interview is as follows : —

" I stated all the circumstances about it; that I had supported the family for twenty years, and if I counted the money up that I had given, it would be a large amount; and to show good feeling, I knew the dangers she would have in handling the money, and to get regular interest, I made the proposition that I would relieve her of the premiums and interest on it if she would leave the money under my control — I did not say in any business — I would give her eight per cent, and then she would have a regular income ; that there might be waste and speculation by her and her daughters, and it might be lost; that I paid the premiums with a view of securing it for her old age. That she declined. Then I told her I was willing to pay the amount, deducting the premiums and interest I had paid. She could not refuse that, for she had no claim to it.

She is not much posted in business matters, and I am not sure she understood it. That was the proposition to her, and that is what I am willing to do now."

1. The contention of appellant is that, on the undisputed facts of the case as they appear from the above testimony the plaintiff was entitled to recover only the balance after deducting the premiums and interest paid by defendant; and that the court erred in giving a declaration of law that "the voluntary payment of premiums to keep up this policy gave defendant no legal right to reimbursement without an agreement to that effect by plaintiff."

We are of opinion that the finding and judgment were warranted by the evidence, and that there is nothing to the prejudice of plaintiff in the refusal of the declarations of law asked by the defendant.

There is no evidence that plaintiff authorized the payment of the premiums by defendant, or knew or suspected that they were being paid by him. She swears she thought they were paid by her husband's money; and, for all that appears, she thinks so yet. Defendant does not state that either Herman or Thomas Meier asked him to pay the premiums. He kept the policy alive out of a natural concern for the interests of his brother's family, who, he says, were, to a large extent, dependant upon him. There is no question of adopting the acts of an agent by ratification, because the money belongs to plaintiff, whether she ratifies or repudiates the action of defendant in paying these premiums. That act is done, and can not be undone; nor can its effects upon the policy be impaired. The act of paying these premiums needs no validation. It does not appear how plaintiff can ratify as the acts of her agent, acts that were done by virtue of no agency, express or implied. One paying premiums on a life policy is not necessarily the agent of the person to whom the proceeds are payable on the death of the insured. If A sells B's horse without any warrant from B, and B knowing all the circumstances

and terms of the sale, accepts the purchase-money, he is estopped to deny that A was his agent, and becomes bound by all the terms of the sale, because the acceptance of the money is inconsistent with a denial of the agency of A in the matter. But the acceptance of the money by the beneficiary of this policy is not inconsistent with a denial on her part that defendant had any authority whatever, express or implied, from her, or from any person interested in the policy, to interfere in the matter at all. Suppose that the premiums paid by defendant to keep the policy alive had exceeded the amount received from the company, would the beneficiary of the policy, if she had taken the money from the insurance company, have then been liable to plaintiff for those premiums? If so, she would have been a loser by a transaction to which she was neither directly nor indirectly a party. Is it to be said that one who keeps up a policy of life insurance for another without his knowledge or consent is to be considered as the agent of the beneficiary in paying each premium up to the point where the premiums and interest are less than the sum to be received, and ceases to be his agent when the premiums paid exceed the sum payable under the policy? Or, if the insurance company fails, is the person who made the voluntary payment to be regarded as having acted as agent for the beneficiary in paying his premiums without his knowledge, though he receives nothing from the company, or a small percentage from the assets, which does not cover the expenditure for premiums? As there was no evidence of authorization from the plaintiff or of any ratification by her, it is impossible that defendant can recover these premiums from plaintiff on any theory of agency. The truth is, it appears from defendant's own testimony that he did not pay these premiums for plaintiff, but for her husband, with whom he had an account and to whom he charged these payments, as he did other advances made to the same person.

There is a policy of the law which, in the absence of any

statute on the subject, will raise an implied promise to repay the necessary expense reasonably incurred in saving valuable property to the owner. But, in those cases, the owner is to be the judge as to whether he will take the property with the burden, or abandon it to the possessor, so that the acceptance of the property is a ratification of the act of the salvor. In the case of an insurance policy, the money belongs to the beneficiary upon the happening of the event provided for, and we know of no policy of the law that the beneficiary takes it from the company with the burthen of repaying to any unknown persons who may have preserved it to him, the premiums paid by them, without his consent, to keep the policy alive. Nothing that adds to the wealth of the world goes out of existence when a life insurance policy is allowed to die. It is a mere question of the distribution of property; and we know of no particular policy which the law, in the interests of society, has as to the keeping in existence of insurance policies without the knowledge or consent of the beneficiary.

If, contrary to the established doctrine that one can not be made the debtor of another by the mere act of the would-be creditor, and against the will, or without the co-operation, of the debtor, we are, in the case of life insurance contracts, to admit this proposed exception to the general rule, where are we to draw the line? Is the widow and beneficiary to take the fund subject to any claims of any and all persons who can show that they have lent money to the insured husband to pay his premiums, or paid them, or any of them at his request? If so, the beneficiary will take her money from the insurance company under circumstances of risk similar to those attaching to the purchase of stock without knowing what amount may have been paid upon it; and she may become liable for a larger amount in premiums than she receives from the company. And by what rule are we to confine the right of recovery to a near relative of the deceased, or to limit it to pre-

miums paid, not to exceed the amount actually received as
the policy?

The evidence on behalf of the defendant goes to this,
that a benevolent relative, recognizing a duty to aid the
family of his brother, has kept up his brother's policy of
life insurance, hoping that, in the event of his brother's
death, his own burthen of aiding his brother's family would
be lessened. He had done this without any understanding
or agreement with the beneficiary, and, so far as appears,
without any special agreement with his brother, who was
entitled to regard the yearly sums paid for premiums and
charged to him yearly as paid, as a loan to be repaid by
him out of his individual estate, and not as any lien upon
the provision which he had attempted to make for his
widow by insuring his life. After the death of the insured,
this brother, who paid about half the premiums accruing
during the existence of the policy, prudently proposes to
retain the proceeds coming from the insurance company,
and which the widow has authorized him to collect for her,
in order to secure a revenue for his brother's family. The
widow and sister-in-law and the children desire to manage
their affairs in their own way, and to receive the money
coming to them, and the uncle then insists upon a fancied
legal right, which he would not otherwise have asserted, to
one-half of the insurance money on account of premiums paid
by him to keep the policy alive. He seems to have no such
legal right, and if there is any hardship here, it is the
not uncommon case of a neglect of precautions which the
law prescribes, and the trust in one's own ideas of the
sense of honor and justice entertained by those with whom
one deals.

The law can not relieve Mr. Meier if, by his own acts, he
has at his own expense put his sister-in-law in possession of
a fund over which he has retained no control in himself, as
trustee or otherwise. On his own testimony, the money
seems to be hers. It might, or might not, be better for

her to allow her brother-in-law to manage it for her benefit and that of her children. Of that, as the children have made over to her all their interest in the fund, she is to be the judge. She is her own mistress; and one main object of all systems of jurisprudence has always been to give to every one his own, and to protect him in the right of doing as he likes with his own, while he is *sui juris*, — so far at least as he does not, in doing so, violate any right of his neighbor.

Learned counsel for appellant has cited many cases, and seems to have diligently, but unsuccessfully, searched for anything in the books which will sustain his position that one who has paid premiums to keep alive a policy without the consent of the beneficiary and for the beneficiary, might claim a lien upon the fund after it became payable, or recover the premiums from the beneficiary, after the money was paid by the company. The case of *Burridge* v. *Row* (L. J. 2 Eq. 369), which learned counsel regards as a parallel case to the one at bar, does not seem to be in point. The case was this: W, on the marriage of his daughter, gave bond to the trustees of the marriage settlement conditioned to pay £5,000, at his death. R, the intended husband, covenanted to pay the trustees £5,000 after his death, and assigned to them policies of assurance for £5,000, the sums received from the policies, if amounting to £5,000, to be in satisfaction of the covenant. The trusts of this £5,000 were for S (the wife) for life, with remainder to R. R, after the marriage, became bankrupt; the trustees proved the value of his covenant as a debt against his estate; and the sum thus produced, £431, was invested in their names. The assignee of R assigned to W all R's interest under the settlement both in the sum of £431 received from R's estate and invested, and in the policy fund. The trustees and the assignees declined to keep up the policies, and the premiums were paid by W for the purpose of obtaining the absolute property in the

·policies. R died, and £5,991, the proceeds of the poli-
cies, was invested in the name of trustees. W became
bankrupt and died. It was held, that the trustees of the
settlement were entitled to hold the two sums of £431 and
£5,991 against the assignees of W towards satisfaction of
the bond of W. It was contended by the assignees of W,
that, the trustees and the assignees of R having declined
to keep up the policies, they had become abandoned and
derelict, and would have expired but for W, and that he
became, therefore, entitled to all received from them. The
chancellor held, however, that, in the absence of any con-
tract with his daughter S, or the trustees of the settlement,
W, however necessary the payment of the premiums might
be to preserve the property, had no other right than to a
repayment of the premiums. That he was entitled to this
repayment seems to have been conceded, and does not seem
to have been made a point in the case. But, at any rate,
W was not paying premiums for any beneficiary under the
policies other than himself, he having taken an assignment
of them from the assignees of R. The question upon which
this case seems to have turned in the trial court, was not
before the court in *Burridge* v. *Row*.

2. No declarations of law were given before the submis-
sion of the cause. All those asked by appellant were re-
fused. The trial court, however, in deciding the case,
handed down a statement of its view of the law applicable
to the facts, which is embodied in the transcript, and which
is regarded by appellant's counsel as a declaration of law.
The case, indeed, seems to have been tried without any
close attention to the admissions in the pleadings, and to
have been treated below, as it has been treated by counsel
here, as if it turned wholly upon the question whether,
upon the evidence of a voluntary payment by defendant,
he was entitled to retain the sum of the premiums paid by
him to keep alive the policy. Were the law otherwise than
we understand it to be as to that, the judgment must be

affirmed, as for the right party, on another ground. Defendant sets up in his answer the agreement with Herman Meier, under which plaintiff, in consideration that Herman Meier would pay the premiums and keep the policy alive, agreed to give up in favor of the children two-thirds of her interest in the proceeds of the policy. Defendant avers in his answer that the premiums paid by him after Herman Meier ceased to pay them were paid under an agreement by which " Adolphus Meier & Co. agreed to assume and pay, and did assume and pay, in the place and stead of said Herman Meier, all the calls of premiums on said policy during the last seventeen years of the life of said Thomas J. Meier, as required by said stipulation and agreement." In view of this admission in the pleadings, it matters nothing what the testimony on behalf of defendant may be as to the matter. On no possible theory could Herman Meier have recovered from defendant the premiums paid by him. He had agreed to keep the policy alive, in consideration that plaintiff would waive in favor of the children her right to two-thirds of it; this she did, and, of course, Herman Meier could not be heard to say that he ought to recover back out of the proceeds of that policy the premiums paid by him. If defendant, as he admits in his answer, merely stepped into the shoes of Herman Meier, and assumed his obligation to plaintiff, he can not, after paying these premiums under that agreement, set up a claim against the fund which is inconsistent with the agreement under which he made the payments. If the law were so that, in the absence of any agreement, he might recover for voluntary payments of premiums, it would not help defendant as a defence to plaintiff's claim, since after paying the premiums in consideration of and in accordance with the terms of her agreement with Herman Meier, he would not be allowed, when the money was collected upon the policy, to repudiate that agreement and claim that his payments, which plaintiff in that case was entitled to regard as made for a

valuable consideration and without any view to repayment, were voluntary and without consideration. The agreement contains no provision that there shall be any repayment of these premiums from the share either of the mother or the daughters. There can be no question that, when the daughters became of age to contract, they might give to their mother their interest in the policy and its proceeds. This they have done, and her right to the entire fund seems to be clear.

The judgment is affirmed. Judge Lewis concurs. Judge Thompson concurs in the result.