## Lebanon Mutual Insurance Co. *versus* Hoover, Hughes & Co.

Where the established course of dealing between an insurance company and its agent, and between the agent and the assured, is to give a short credit for the premiums on the policy of insurance, and on the renewals thereof; so that the assured becomes the personal debtor of the agent for said premiums, and the agent in turn becomes the personal debtor of the insurance company for the same; a payment of the premium, according to the course of dealing, after the delivery of the policy or a certificate of renewal thereof, in this case after the fire, will not render the policy void, under the clause therein providing that if the assured " shall have neglected to pay the premium, then and in every such case this policy shall be void."

February 17th, 1886. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. GORDON, J., absent.

ERROR to the Court of Common Pleas of *Centre county:* Of July Term 1885, No. 102.

This was an action of covenant brought by E. C. Humes, George W. Hoover and W. V. Hughes, partners, trading as Hoover, Hughes & Co., against the Lebanon Mutual Insurance Company, to recover the amount of a fire insurance policy on the property of the plaintiffs destroyed by fire. Pleas, cove-- nants performed, *absque hoc.*

The following facts appeared on the trial, before KREBS, P. J.:

Hoover, Hughes & Co., the plaintiffs, were manufacturers and dealers in lumber, owning and operating several large steam saw mills and a planing mill. In April, 1882, they operated one of their mills, located at Brisbin, near Houtzdale, in Clearfield county. They made application for insurance on their lumber to Charles Tredick, of Philadelphia, a general insurance agent and broker, through whom they procured a large amount of insurance, and through whom they transacted nearly, if not all, their insurance business.

Mr. Tredick sent the application for a general policy on their lumber in the sum of $1,000, to the Lebanon Mutual Insurance Company. The company accepted the application and issued a. policy dated April 24th, 1882, insuring $1,000 on Hoover, Hughes & Co.'s lumber at their Brisbin mill, for one year from date of policy, for which the premium was paid. On or about the 4th day of April, 1883, Hoover, Hughes & Co. made application through Mr. Tredick for a renewal of this policy, which was done by the company, by issuing a renewal certificate which was attached to the policy, and continued it in force for one year from 12 o'clock at noon of April 24th, 1883, until 12 o'clock at noon of April 24th, 1884. For this renewal the premium was paid.

And again, on or about the 1st day of April, 1884, on application of plaintiffs, Mr. Tredick, the company, by the issuing of their certificate of date April 1st, 1884, and attached to the policy, continued the insurance for another year from April 24th, 1884, at 12 o'clock noon, until April 24th 1885, at 12 o'clock noon. For this renewal the premium was not paid, and no offer or attempt to pay it was made until after the fire. The lumber insured by this—and a large number of other policies issued by other companies—was totally destroyed by fire on the 2d day of May, 1884. On the 3d day of May, 1884, the plaintiffs sent a notice of the fire and loss, by registered letter, to the company at Jonestown, Lebanon county, Pa., and the same day sent their check for $30, the unpaid premium, to Mr. Charles Tredick at Philadelphia. Among the conditions contained in the policy was one that if the assured "shall have neglected to pay the premium, in such case this policy shall be null and void." The company refused to accept the. premium after the fire, and denied their liability under the policy, because of the neglect of the assured to pay the premium. After some correspondence between Mr. Tredick and the company, in which Mr. Tredick admitted he received a check from the firm on the 5th day of May, 1884, he sent his check to the company's special agent, Mr. Karmany, for the premium, acceptance of which was refused, and the check returned. Afterwards he sent the amount in a registered letter, addressed to the secretary, Mr. J. G. Heilman, at Jonestown, Lebanon county, Pa., which Mr. Heilman refused to accept, and immediately returned it by registered letter to Mr. Tredick at Philadelphia. This letter Mr. Tredick refused to receive, and it was returned to the postoffice at Jonestown, where it remained, and was in the custody of the postmaster at the time of the trial.

The policy had stamped on its face in red ink the following:

"Note.—It is a part of the contract that any person who may have procured this insurance, to be taken by this company, shall be deemed the agent of the assured named in this policy and not of this company."

Plaintiffs offered in evidence an account current of the Lebanon Mutual Insurance Company, dated July 6th, 1883, and identified by Mr. Karmany. This is offered for the purpose of showing that the company, defendant, was in the habit of dealing with Mr. Tredick, through whom this insurance was furnished to the plaintiff as their personal debtor for the amount of the premiums upon the policies furnished to him; that settlements were made with him for those premiums bimonthly or tri-monthly, and that the company, as a matter of fact, in any case in which insurance was furnished through Mr. Tredick, dealt with the insured—to be followed by proof that Mr. Tredick made the insured in this case, and in similar cases his personal debtor for the amount of the premiums, and accounted to the company for the amount of the premiums whether the insured paid him or not; the payments in such cases being made upon a demand of the company, which is to be followed by further proof that the said Tredick was a regularly accredited agent of the company, defendant, in Philadelphia, and acknowledged as such.

Defendant's counsel objects:

1. Because it does not appear upon the face of this paper nor in the offer of the plaintiffs, that Hoover, Hughes & Co. had any notice of this paper or this course of dealing, nor that they had any knowledge of it, and that it being already in evidence, offered by the plaintiff himself, that Tredick was the agent of the insured and not of the defendant. And the testimony is further irrelevant and not pertinent to the issue. Defendants further object that the bill does not purport to be a paper from the company.

Objection overruled, evidence admitted, and bill sealed for defendants. (First assignment of error.)

Plaintiffs offered in evidence letters of D. M. Karmany, S. A., to Charles Tredick, dated respectively, Lebanon, Pa., February 22d, 1883, May 5th, 1883, June 7th, 1883, for the purpose of showing that defendant company held Mr. Tredick personally liable to them upon policies issued by the company and sent to him, upon which he received no premiums, the purpose of the offer being to show the manner in which the defendant company did business with Mr. Tredick, their agent at Philadelphia. Defendant's counsel object:

1. That they are not the letters of the company, but of the

3 AMERMAN—38

special agent, between him and the insurance broker, Mr. Tredick.

2. Because they are irrelevant, and not pertinent to the issue.

Objection overruled, evidence admitted, and bill sealed for defendants. (Second assignment of error.)

Plaintiffs' counsel proposed to ask the witness on the stand (Charles Tredick) in what manner he dealt with plaintiffs in furnishing them insurance, particularly the insurance furnished by the Lebanon Mutual Insurance Company, and whether or not in such dealing he made the parties plaintiff his personal debtor; how and when the bills of insurance were furnished to them, and how paid by them.

Defendant's counsel object:

1. Because the bills would be the best evidence as to how the accounts were kept.

2. And generally, because it is irrelevant.

Objection overruled, evidence admitted, and bill sealed for defendants. (Third assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows: The controversy in this case arises solely from the alleged violation of the condition in the policy contained in the 5th section, which is in this language: "Or shall have neglected to pay the premium; in such case this policy shall be null and void." In this paragraph there are a number of conditions or stipulations, the happening of which shall make the policy void, and among them is the one to which we have referred. That, gentlemen of the jury, is a part of this contract; that for the insurance of one thousand dollars upon this lumber, at the point named, the insured, Hoover, Hughes & Co., should pay the premium which was the sum of $30, and by the renewals that contract continued in existence at the time this loss occurred.

Another condition in this contract is found in the seventh paragraph, and is referred to and relied upon as a defence by counsel for the defendant, and is in this language: "The use of general terms, or anything less than a distinct agreement clearly expressed and endorsed on this policy and signed by a duly authorized agent of the company, shall not be construed as a waiver of any printed condition or restriction therein." It is also claimed as a part of this policy that that portion which is stamped upon this policy in red ink and is in this language: Note:—"It is a part of this contract, that any person, who may have procured this insurance, to be taken by this company, shall be deemed the agent of the assured, named in this policy, and not of the company;" and that that is a material part of the contract between the plaintiffs and defendant, and is to

be considered in the disposition of this case; and that as the premium of $30 upon this last renewal was not paid until the 3rd of May, 1884, one day after the fire had occurred and loss ensued, that therefore under these three conditions, stipulations or parts of this policy, the company is not liable to pay this insurance of $1,000 to the plaintiffs. If the result of this case depended wholly upon the policy as it is, without any other evidence except that of non-payment of premium before the loss occurred, we would instruct you as a matter of law, that there could be no recovery in this case.

But we believe it to be the law in Pennsylvania that a condition contained in a policy may be waived by the company or its accredited agent, [the "note" which is endorsed upon this policy in red ink, and which, so far as there is any evidence in this case showing how it came there, would seem to have been put on in the office of Charles Tredick, has reference only to the matters and things, and statements and warranties contained in the application, and that it has special reference to that, and that so far as the conditions of this policy are concerned or a waiver thereof by the company and its agents it has nothing to do, and is not to be considered in this case.] (Fourth assignment of error.)

You will notice, gentlemen of the jury, that the language of this condition is not that the premium must be prepaid before the policy goes into effect, but the language is, " or shall have neglected to pay the premium, then, and in every such a case the policy shall be null and void." Now, gentlemen of the jury, if the company from its home office had delivered this policy of insurance to Hoover, Hughes & Co. without exacting the payment of that premium, it would have been a waiver of that condition in the policy by their own act and the policy would have been binding upon them, for they had waived it and given credit to the assured. [The question therefore which becomes most important for you to determine, or one of the questions which becomes most important for your determination is, whether Charles Tredick, who made this renewal and who delivered it to the insured was the agent of the Lebanon Mutual Insurance Company. If he was the agent of the Lebanon Mutual Insurance Company, and delivered this renewal of this original policy without receiving the payment of the premium, and the Lebanon Mutual Insurance Company kept an account with him, as their agent, in which they charged him with the premiums and looked to him for the premiums, then it is a waiver of the conditions in this policy, and the plaintiffs are entitled to recover the amount of insurance.] (Fifth assignment of error.)

Now, gentlemen of the jury, in the examination of that

[Leoanon Mut. Ins. Co. *v.* Hoover, Hughes & Co.]

question you are to divert your minds of all prejudice in this case—because if, in the weighing of the testimony on the one side or the other, you, in ascertaining the truth of that, which is one of the important facts in this case, the most important, probably, should make a mistake, there might be no way of correcting that mistake. If we make an error in our instruction to you, or in our construction of the law that can be easily found, the Supreme Court can readily correct it and the rights of the parties preserved. Therefore we charge you, specially, that in the examination of this question of fact, which we have submitted to you, that you divest your minds of all prejudice which you may have towards the parties in this case. You are to determine the facts in the case irrespective of the situation or condition of these parties, whether one is a private individual and the other a corporation, makes no difference.

In support of this alleged fact that Mr. Tredick was the agent of the Lebanon Mutual Insurance Company, papers have been offered in evidence which it is alleged show that the Lebanon Mutual Insurance Company kept a debtor and creditor account with him at their office, and that he, at stated periods, remitted them the moneys or the premiums which he was liable to them for, upon policies which they had sent him.

On the part of the defendant company, it is contended that ne never was their agent, and that the only thing that was done was, when a policy was issued they made a record of it in a record book in which his name appears as the person to whom it was sent, and from that book, as we understood Mr. Karmany, he was in the habit of sending these notices to Mr. Tredick, that such and such premiums were expected from his hands. [Now, from all the evidence on both sides on that question, you are to determine, first, whether or not Mr. Tredick was the agent of this company; and, secondly, whether or not they looked to him as a debtor from whom they should receive these premiums, and whether or not he had delivered this policy as the agent of this company to Hoover, Hughes & Co., and gave credit to them; because these facts, together, if established, in our judgment would constitute a waiver of this condition in this policy by which it is stipulated, that if the premium be not paid, the policy shall not be valid.] (Sixth assignment of error.)

It is not necessary for us, gentlemen of the jury, to recount the testimony that has been ably and elaborately argued on both sides by the respective counsel; the facts are for you; any opinion we could express would not bind you. [You must determine from the evidence in the case, first, whether or not Mr. Tredick was the agent of the company; and, sec-

ondly, whether or not the company looked to him for, or had him charged with this premium, and whether or not he had delivered this policy to Hoover, Hughes & Co. and had given them credit. We might further say on that subject, that if by the course of dealing of the defendant with Mr. Tredick and the insured, the insured were led to believe that the company did not insist upon the prepayment of this premium before the policy became valid, that that would constitute a waiver.] (Seventh assignment of error.)

The defendant presented a number of points for charge. The instructions requested in answer to these are substantially given in the general charge.

Verdict for the plaintiff in the sum of $1043 and judgment thereon, whereupon the defendant took this writ, assigning for error, *inter alia*, the admission of evidence, and those portions of the charge included within brackets as above shown.

*Adam Hoy* for plaintiff in error.—The payment of the premium was absolutely essential to protect the assured, and a condition that could not be waived unless the same was in writing. Such is the principle of Waynesboro Mutual Fire Insurance Company v. Conover, 2 Out., 385, and of Universal Mutual Fire Insurance Company v. Weiss Brothers, 10 Out., 20, where it is expressly decided, "that the condition of the policy, requiring that a waiver of its terms must be 'indorsed on the policy,' was valid and binding."

*James A. Beaver* (*Gephart* with him), for defendant in error.—It has been settled upon abundant authority, that insurance companies may waive the provisions of their policies, by their general dealings through their agents with the insured : May on Insurance, § 360 ; Carson v. Jersey City Fire Insurance Company, 38 American Reports, 584. "Delivery of a policy to the agent authorized to deliver it to the insured and receive the premium, in his delivery of the policy to the insured and acceptance of a note for the premium, and procuring a discount of the same for his own account without paying the premium to the principal, constitutes a valid insurance, in spite of a provision in the policy that such agent shall be deemed the agent of the insured, and that the insurer shall not be liable until he actually receives the premium."

To same effect, Woody v. Old Dominion Insurance Company, 31 American Reports, 732. See also Girard Life Insurance Company, administrator of Edward Megargee v. Mutual Life Insurance Company of New York, 86 Pa. St., 236 ; Helme v. Philadelphia Life Insurance Company, 61 Pa. St., 107 ; Coursin v. Pennsylvania Insurance Company, 46 Pa. St., 300.

[Lebanon Mut. Ins. Co. v. Hoover, Hughes & Co.]

This court has, in late cases, approached the point which we make in the present case, notably in the case of Universal Fire Insurance Company *v.* Block, decided in October, 1885, in which it is held " that a condition in a fire policy, that the Company shall not become liable until the premium has been actually paid into the Company's treasury, may be waived by the Company's adopting a course of business of allowing agents to issue policies on receiving checks for premiums. Although this Court may not have gone, heretofore, to the full extent of the doctrine which we allege to be the law, they have in several cases intimated, at least, a willingness so to decide whenever the facts warranted them in so doing: Marlin *v.* Royal Insurance Company, 71 Pa. St., 397; see also Riley *v.* Commonwealth Insurance Company; Central Reporter, 1886, 119; Universal Fire Insurance Company *v.* Block, Id., 554; Miller *v.* Life Insurance Company, 12 Wall, 285; Insurance Company *v.* Colt, 20 Wall, 560; Faukle *v.* Penn. Fire Insurance Company, 12 Ins., L. J., 614.

Mr. Justice STERRETT delivered the opinion of the Court, October 4th, 1886.

One of the conditions of the policy in suit is, if the assured "shall have neglected to pay the premium, . . . . . then and in every such case this policy shall be null and void." The alleged breach of this condition is the only defence interposed by the insurance company.

The policy issued April 24th, 1882, for one year from that date, was twice renewed. The first renewal certificate is dated April 4th, 1883, to take effect at expiration of original risk, and the second April 1st, 1884, to take effect on the 24th day of that month. In both of these certificates, issued by the secretary under seal of the corporation, the payment of $30, renewal premium, by the assured is acknowledged; but, in point of fact, the first was paid to the company on June 4th, 1883, and the second was remitted to Mr. Tredick, agent of the company, on May 3d, 1884, next day after the fire, and was by him immediately forwarded to plaintiff in error, who refused to receive or recognize it as a payment, for the reason that the property covered by the policy was destroyed before the renewal premium was paid or tendered.

On the trial, evidence was received tending to show that Tredick, through whom the insurance was placed, was the recognized agent of the company for the purpose of securing risks, receiving and remitting premiums, etc.; that in his dealings with the company he was made its personal debtor for premiums on all policies issued through him, and that he periodically accounted to it therefor, whether the money

was received by him from the persons to whom the policies were issued or not; that he made the persons or firms to whom he delivered policies, his personal debtors, and dealt with them in that relation, charging them with the premiums on his books, sending them bills in his own name and making himself responsible to the company for the same, and that the bills for premiums were generally rendered sometime during the month after the insurance was effected. The admission of this evidence was excepted to and is the subject of complaint in the first three specifications of error. In submitting the case to the jury, on the evidence above mentioned, the learned judge instructed them in substance to find for the plaintiffs if they were satisfied as to the truth of the facts alleged by them. These instructions are also assigned for error in the fourth to the seventh specifications, inclusive.

In view of the testimony, the instructions under which it was submitted, and the verdict in favor of plaintiffs for the full amount claimed by them, the jury must have found all the controlling facts in their favor. They must have found, among other things, that the relations existing between the company, Tredick, its agent, and the assured were of such a character that it could not be truthfully said the latter neglected to pay the last renewal premium. To visit upon them the consequence of neglect to pay the premium it should appear they were in default—that the premium was payable on delivery of the renewal certificate, or within a specified time thereafter, and that they had neglected to pay it accordingly. The finding of the jury, however, negatives any such conclusion. They found the established course of dealing between the three parties concerned, was that Tredick, the agent, was treated as debtor to the company for premiums on all policies or renewal certificates procured through him, whether he received such premiums from the parties in whose favor they were issued or not, and that he was not expected to account and pay to the company until a statement was rendered during the next succeeding month; that as between Tredick and the assured the latter were not expected to pay in advance, but upon demand made by him a month or more after the insurance was effected. If such was the mutual understanding of the parties (and the jury has impliedly found it was) it would be a mere travesty of justice to hold that they neglected to pay the premium in question, and thus permit the company to shirk the payment of an honest obligation. It cannot be truthfully said the assured neglected to pay a premium which, according to the mutual understanding of all the parties, was not demandable before it was actually remitted to the party entitled to receive it.

[Lehigh Valley Railroad Co. *v.* Greiner.]

The true answer to the narrow, technical defence, interposed in this case, is not that there was an actual waiver of the condition in question, but that there was a mutual understanding between the parties, that instead of a strictly cash payment of premiums at the time of effecting insurance, a short credit would be given by the company to its agent and by him to the assured. This fact was so clearly and conclusively shown by the testimony, that the jury, under the instructions given them, could not have done otherwise than find for plaintiffs.

It is unnecessary to consider the specifications of error in detail. The plaintiff in error has no just ground of complaint in regard to either of the rulings of the Court. The evidence complained of was properly received and submitted to the jury with instructions which, in the main, are correct. In the light of the testimony, and the facts which the jury must have found therefrom in reaching the conclusion they did, the defence is destitute of merit, and such as no reputable underwriter should ever insist upon.

Judgment affirmed.