## BUNN v. McADAMS, ET UX.
(No. 1464; May 23, 1928; 267 Pac. 514)

*M. H. Weiss* and *John Sawyer,* for appellant.

*Reid & More,* for respondents.

402

RINER, Justice.

This case is before the court upon direct appeal from a judgment of the District Court of Goshen County, Wyoming. For convenience, the parties will be referred to as plaintiff and defendants. The action was commenced July 9, 1926.

Plaintiff's amended petition sets out that the defendant Arthur L. McAdams asked plaintiff to advance him the sum of $2900 for the purpose of buying certain described real estate in Goshen County, Wyoming, promising that if plaintiff would advance this money for that purpose, and the real estate was purchased therewith, McAdams would give plaintiff a mortgage upon the property "or that he would otherwise secure the payment to plaintiff of the money so advanced;" that about the 15th of September, 1924, the sum above mentioned was advanced to McAdams and early in the October following the land was purchased from one Holm, the owner thereof, and deed to McAdams was received from Holm and placed of record in Goshen County; that about November 1, 1924, McAdams delivered to plaintiff his promissory note for $2900, bearing four per cent interest, which note did not mature until November 1, 1926, plaintiff alleging that the note was not taken by him in payment of the money theretofore advanced defendant McAdams, it not being plaintiff's intention to release his legal or equitable rights and interest in the land aforesaid; that the defendant Armanda McAdams, who was the wife of Arthur L. McAdams, knew the circumstances and arrangements under which her husband received the money for the purchase of the land, her only interest therein being such as is given her by the homestead laws of this state, and being nevertheless subject to the rights of the plaintiff therein; that the note for $2900 is tendered for cancellation or such disposition thereof as the court may see fit to make; that the homestead rights of both the defendants in the property are inferior to the equitable rights of plaintiff; that defendants have refused to execute to him a mortgage upon the property or to repay the plaintiff the money thus advanced. The relief asked is that the court find the amount due plaintiff from the defendant Arthur L. McAdams, and that plaintiff is entitled to a lien upon the

real estate mentioned for the full amount so found to be due; that the lien be foreclosed, the property sold and a deficiency judgment against the defendants entered, if that be necessary.

Defendants in their joint answer, filed October 22, 1926, admit the execution of the note for $2900 and allege that it will not, by its terms, become due until November, 1926, conceding that at that time Arthur L. McAdams will be indebted to plaintiff for the amount of the note. The answer expressly denies that there was any agreement whatever at the time or before the time of the execution and delivery of the note, that McAdams would give plaintiff a mortgage on any real estate purchased, denies that there was any agreement to in any way secure the payment of the note, and alleges affirmatively that plaintiff voluntarily made a loan of this money without any promise on the part of the defendant McAdams with respect thereto except that the latter would try and pay the note when it became due. The purchase of the real estate is admitted to have been made with $2,000 of the money loaned to McAdams by the plaintiff. The answer denies also that defendant Arthur L. McAdams ever refused to give plaintiff a mortgage upon the real property aforesaid, alleges that plaintiff never asked defendants for one, and that defendant Arthur L. McAdams intends, when the note becomes due, to try and pay same. The answer further admits the existence of the homestead interest of the defendants as alleged in plaintiff's pleading, and that their homestead interest is prior and superior to any right plaintiff has in the land. Defendants ask for a dismissal of the suit. A reply was filed denying the allegations of the answer, except as they admit the statements of the plaintiff's pleading.

Trial was started before the court with a jury in attendance, but upon the conclusion of the plaintiff's case, the record shows that the parties mutually agreed that

the court discharge the jury for the reason that "the questions in this case are not such as should be submitted to a jury." The cause proceeded before the court, and, after taking the case under advisement, upon briefs, decree was entered finding generally in favor of the defendants and against the plaintiff. There were special findings of fact in the decree also, leading up to a judgment in defendants' favor, that plaintiff take nothing by reason of the action.

The facts, as shown by the record, which are material to the disposition of the case, are substantially as follows: Plaintiff and the defendant Arthur L. McAdams were friends of many years standing. McAdams, after a trip to Wyoming, told plaintiff that he knew of some opportunities to make an advantageous land purchase in that state, but that he could not do so, not having available funds. Plaintiff agreed to advance these funds, so that McAdams might make a purchase. To do this, plaintiff, towards the middle or latter part of September, 1924, gave Arthur L. McAdams two checks, which were not dated and their amounts were left blank. The name of Arthur L. McAdams, as payee, was inserted in each and each was signed by the plaintiff. After deciding upon the land to be purchased, defendant Arthur L. McAdams filled in one check for $2500 and the other for $400. They were cashed by him and $2,000 of the money was used to purchase the land mentioned in plaintiff's amended petition, about $800 was used for placing improvements on the property purchased and the balance of the money employed as expense money in making several trips back and forth from Nebraska—where the parties to this action then lived—to Wyoming.

Several months after the transaction, Arthur L. McAdams gave plaintiff a note to cover the amount advanced, as above—the note being dated November 1, 1924, bearing four per cent interest and running for two years. Plaintiff,

in his testimony, made no claim that defendant Arthur L. McAdams had agreed to give him a mortgage upon the land for the money advanced at the time the notes were given or previous thereto. On the contrary, he said that he advanced this money on the faith of defendant McAdams' promise to have his father-in-law sign a note with him for the amount, and that no other promise was made. On cross-examination, the plaintiff admitted that defendant Arthur L. McAdams offered him a mortgage upon the land the day the note was signed, and plaintiff would not accept it.

Defendants' testimony was to the effect that there was no agreement made at the time, or prior to the time plaintiff gave the checks to him, as to security; that plaintiff was to let McAdams pay it back as he made it in Wyoming; that no security was asked for or offered; that some months after the transaction had been completed, plaintiff asked McAdams for a note; that McAdams said to plaintiff at that time: "My personal note is not very strong. I will give you a mortgage on the place." To which plaintiff replied that he did not "want any land;" that after the note was given, plaintiff made an effort to secure McAdams' father-in-law as security thereon; that plaintiff never demanded a mortgage on the land from McAdams; that he had twice offered plaintiff a mortgage on the land, and plaintiff had not seen fit to accept the offer.

Upon these facts it is urged on behalf of the plaintiff, in accordance with the prayer of his amended petition, that he should have a lien upon the land purchased with the money advanced by him. It is quite clear, we think, from the record, that the transaction between the parties was a simple loan of money from plaintiff to McAdams. If there was to be any security given at all at the time that the loan was made, it was not to be on the land purchased, but was to be in the form of the signature of the

father-in-law upon the note given by McAdams for the money borrowed. Does the law grant plaintiff a lien under such circumstances? We think not.

In Fike v. Ott, 76 Neb. 439, 107 N. W. 774, where an instruction, refused by the trial court, was assigned as error, it being urged, as here, that the advancement of money to a vendee created an equitable interest in the land, the court said:

"This instruction was properly refused. The evidence shows that the plaintiff's husband borrowed the money to pay for the 10 acres, taking the title in his wife's name. The instruction is to the effect that where one who loans money to another for the purchase of real estate, he thereby acquires an equitable interest in the real estate in which the borrower invests the money. No authorities are cited in support of this proposition, and it will be conceded, we think, that none can be found."

In Leach v. Leach, 167 Minn. 489, 209 N. W. 636, it appeared that the mother of one of the defendants had turned over to him $2,000, this sum to be regarded in the nature of an advancement on the share he was to receive in the mother's estate upon her decease. It was agreed, however, that the mother was to receive interest upon the amount. The plaintiff in the case was the wife of the son, the action being one for partition. The husband and wife had separated. In response to a claim that the mother had a lien upon the property involved, because the money had been used for building the son's home upon it, the court said:

"Mary Leach sought to charge the premises with a lien to secure the payment of the interest on the $2,000 for which the other parties had obligated themselves. The $2,000 was used in building the house. That was a gift. But the transaction required the payment of interest. The lien is sought to secure its payment. No lien or security was exacted as a part of the original transaction.

We know of no rule of common law nor of any statute which will support, or give, a lien under such circumstances. It is urged that equity will reach the facts and create a lien. This case, however, cannot be classed with those cases where a court of equity will trace money after a wrongful conversion and impose a trust on the property acquired by it, or where there is a violation of a trust such as in Sieger v. Sieger, 162 Minn. 322. The general rule is that, in the absence of misconduct, one who advances money to another to enable him to purchase property has no lien therefor, unless there is an express agreement showing an intention to charge the property with the debt. Strong v. Krebs, 63 Miss. 338; Walther v. Knutzen, 37 Neb. 420; 55 N. W. 1060; Ruhl v. Kauffman, 65 Tex. 723. If there is a violation of the contract, the mother has an appropriate remedy at law.''

In Bolling v. Pikeville Nat. Bank, 213 Ky. Ct. of App. 317, 280 S. W. 1090, the plaintiff bank loaned money to defendants, which went into the purchase of a house and lot where defendants resided. The bank prayed that it be adjudged a lien equal to a vendor's lien on the house and lot to secure it in the payment of the money advanced and loaned to defendants, which sum was paid for the house and the betterments. In reversing a judgment in favor of the bank, the following language was used:

''Appellee bank did not claim that it had any contract with appellants whereby it was to have a lien upon their residence located in Pikeville, and described in the petition and judgment, but bases its claim to a lien on the property upon the mere ground that it loaned the money to appellants, and appellants invested the money in the home. The loan was made by the bank to Bolling upon a personal note, and that note was secured by an accepted order on Fon Rogers, who it appears was at that time indebted to appellant J. M. Bolling in the sum of several thousand dollars. No principle is better settled than that a lender of money on personal surety, which money is by the borrower used in purchasing lands, gives the lender no lien upon the land to secure the money. One of the earliest cases on this subject from this court, to which our

attention has been called, is Cecil v. And, 7 Ky. Law Rep. 298, where it was held that one who loans money to another, to be used and which is used in purchasing land, does not thereby acquire any lien upon the land so purchased. This rule was reaffirmed in Flannary v. Utley, 3 S. W. 412, 5 S. W. 878, 9 Ky. Law Rep. 581, and in Reid v. Jackson, 6 Ky. Law Rep. 743.

"In the course of a discussion of the question of whether a lender of money on personal surety, the money being used by the borrower to purchase land, the lender thereby obtained a lien on the land to secure the loan, we, in reversing the judgment in the case of Griffin v. Proctor's Adm'r, 14 Bush, 571, said: 'We do not think that the fact that the money borrowed by appellant of appellee, or a portion of it, was applied by appellant in payment for his land, will support the judgment of the court below. There was no agreement that appellee should be substituted to the lien of the vendor, nor that he might in any way look to the land as a security for payment. The loan appears to have been made solely upon the personal security of appellant. In such a case there can be no subrogation of the lender to the rights of the borrower's vendor.'

"See also 17 R. C. L. 605.

"From this it clearly appears that the trial court erred to the prejudice of appellants in awarding appellee bank a lien upon appellants' residence property in Pikeville to secure the bank's debt, on the theory that the property, having been purchased with money borrowed from the bank, was subject to the bank's lien."

The majority of the cases referred to above are quite recent decisions, and the general text writers on the point are to the same purport. See 1 Jones on Liens (3d Ed.) Sec. 75; 17 R. C. L. 605, Sec. 14; 37 C. J. 321, 323, Sec. 28; 39 Cyc. 1802, subd. 12.

As intimated above, whether there was to be any security at all was in dispute, i. e. the testimony on the point was conflicting. The trial court had the parties before it and it was within its province to believe one or the other. But even if the court believed that the agreement

between the parties was to the effect that the father-in-law should add his name as security to the note, it is clear that the legal aspect of the situation, under the authorities that we have cited, would not have been changed. The trial court could not properly have transmuted an agreement of that character into one for a lien upon the land. Such a conclusion would be the more easily reached because of plaintiff's conceded refusal to accept a lien for the amount of money loaned upon all of the property purchased.

It is next contended that a trust should be imposed upon the land in favor of the plaintiff, because his money was loaned to the defendant Arthur L. McAdams to enable the latter to purchase it. Our examination of the record has led us to the view that plaintiff, neither before, at the time of or for several months after the loan, desired any interest whatever in the land. His wish was for personal security only. The search of the authorities which we have made, has convinced us that upon the facts shown by the record in this case, plaintiff's contention last above set out must also meet with our disapproval. In Maupin v. Longacre, 315 Mo. 872, 288 S. W. 54, the court used this language:

"It is claimed by appellants that the land was purchased by Welborn with the separate means of his wife which he had not reduced to his possession with her written assent, and, consequently, that a trust resulted in her favor. She affirmed, however, after his death, that she had loaned him the money, and on the basis of that claim obtained a judgment against his estate as and for a debt. She, if living, would not now be heard to assert the contrary; nor will those who claim under her.

"'It is a well-settled rule that where money is advanced by way of a loan to be used by the borrower in the purchase of property in his own name no resulting trust arises in favor of the lender.' 29 Cyc. 135.

"A loan of money without fraud by the borrower merely creates the relation of debtor and creditor, and no rule of equity transforms such a transaction into a trust or creates the relation of trustee and *cestui que* trust between

the borrower and lender. Cottonwood County Bank v. Case, 25 S. D. 77, 125 N. W. 298. There was no trust in favor of the wife in this case.''

In Jordan v. Jordan, (Tex. Civ. App.) 154 S. W. 359, it was said:

''The facts conclusively establish that Albert C. Jordan purchased the property for himself and as his own; and that the money that went to pay for same was obtained by Albert C. Jordan from appellee as a mere loan, and nothing more. These facts are inconsistent with any payment of money by appellee in the character of purchaser. No resulting trust exists in favor of one who pays the purchase money by way of mere loan to another; the conveyance being taken in the name of the borrower. Boehl v. Wadgymar, 54 Tex. 589; Levy v. Williams, 20 Tex. Civ. App. 651, 50 S. W. 528; Whaley v. Whaley, 71 Ala. 159, 1 Perry on Trusts, Sec. 133.''

In Hitt v. Applewhite, (Miss.) 20 So. 161, it appeared that A. bought a piece of land, paying part of the purchase money, and H. paid the balance. The deed was made to H., who then gave his note for the amount advanced by A. to the latter. The note was subsequently renewed by the execution of another note for the amount due on the original note. A., by his bill of complaint, sought to establish a trust upon the land purchased, that the amount due from H. be made a charge thereon and the land sold to force payment. H. admitted the execution of the notes but claimed that the money advanced was simply a loan. Complainant's testimony was that H. came to him and said he wanted to buy certain land at a price he mentioned; that if A. would let him have $400, he could close the trade; that complainant agreed to get the $400 for H.; that he procured the money and paid about $400 on the land and H. paid the balance. In reversing the decree of the trial court for complainant, the reviewing court said:

"On the appellee's own testimony, we think it clear that the transaction disclosed is simply one of borrowing, on the part of Hitt, the $400 from Applewhite. Hitt first gave a note for the $900, taking bond for title, and afterwards gave Applewhite his note for the same, made sundry payments on the interest, and renewed it. It seems perfectly clear that Applewhite never purchased, or intended to purchase, any interest in the land, but Hitt was to own the whole. There is no place here for the doctrine of resulting trust or of subrogation."

In Cottonwood County Bank v. Case, 25 S. D. 77, 125 N. W. 298, it appeared that the civil code of South Dakota provided: "When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." With this statute before it, in discussing a contention that as some $2300 loaned to the defendant by the plaintiff bank, on the alleged security of certain lands, went into and was paid as part of the purchase price of said lands, plaintiff should therefore be entitled in equity to a return thereof, the court said:

"It is clear that the deed given to the bank by Case as security was absolutely void as against Aupperlee. Hence the only possible theory upon which the bank could invoke the aid of a court of equity would be to ask the court to decree that Case held these lands as a resulting trust for the benefit, not only of Aupperlee, but also of the bank, to the extent that the bank had paid the purchase price. But, when this money was loaned to Case by the bank and placed to his credit, the bank ceased to have any control over or interest or ownership in it. It was Case's money, to do with as he chose. The bank had absolutely parted with it, and all interest in or claim to it, in exchange for Case's note and a void security. There is nothing in the record to show that this money had the character of a trust fund as money of the bank in Case's hands. It was simply borrowed money. Suppose Case had invested the money borrowed of the bank in other

lands. Could it be contended for a moment that the bank acquired an equitable interest in such lands, because it once owned the money with which Case purchased them? In what respect does such a transaction differ from the case at bar? Loaning money to a borrower, and placing funds in the hands of an agent, are essentially different transactions. A loan of money to another without any misrepresentation or fraud on the part of the borrower merely creates the relation of debtor and creditor, and we know of no rule of equity which may transmute or transform such a simple transaction into a trust, or create the relation of trustee and *cestui que* trust between the borrower and the lender."

See also 39 Cyc. 135, and extended list of cases cited in note 11.

We have carefully examined the authorities and arguments advanced by plaintiff in the case at bar, but do not consider them of persuasive force in view of the facts disclosed by the record before us. It was not asked that a personal judgment be entered against the defendants, nor is any complaint made here that it was not. Besides, the action was started before the note was due. No attempt was made to bring the fact of the subsequent maturity of the note into the case by supplemental pleading, even if that could be done, of which there is considerable doubt. See 1 Bates Pleading and Practice, 557, Sec. 4, and cases cited.

Finding no error in the decree under review, the same is affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J. concur.