## COTTONWOOD COUNT BANK v. CASE et al.

Where allegations in the answer charging plaintiff with fraudulent conduct were entirely abandoned by defendant, both at the beginning of the trial and throughout the introduction of the evidence the failure of the court to make findings of fact and conclusions of law thereon was not error of which plaintiff can complain.

Civ. Code, § 303, provides that, when a transfer of real property is made to one person and the consideration paid by another, a trust is presumed to result in favor of the person by or for whom such payment is made. Section 304 provides that no implied or resulting trust con prejudice a purchaser or incumbrancer for value without notice of the trust. Held, that a purchaser and incumbrancer stand on the same ground, and that a resulting trust will be enforced against either, taking with notice thereof, where it would be enforced against the person through whom such purchaser or incumbrancer

claims, irrespective of whether the purchase or incumbrance is based upon a valuable consideration.

A deed of a trustee in violation of his trust is invalid unless with the consent of the beneficiary.

A loan of money without fraud by the borrower merely creates the relation of debtor and creditor, and no rule of equity transforms such a transaction into a trust or creates the relation of trustee and cestui que trust between the borrower and the lender.

One who claims that his money has been used to purchase land, title to which is taken by another, has the burden to establish it by clear proof.

(Opinion filed, Feb. 23, 1910.)

Appeal from Circuit Court, Clark County. Hon. GEORGE H. MARQUIS, Judge.

Action by the Cottonwood County Bank against Wesley Case and others. From a judgment for insufficient relief and from an order denying a new trial, plaintiff appeals. Affirmed.

*Wilson Borst, Elrod, McGaan & Durnham,* and *S. A. Keenan,* for appellant. *C. G. Sherwood* and *O. H. Ames,* for respondents.

SMITH, J. This action was brought in the circuit court of Clark county for the purpose of having a warranty deed declared and foreclosed as a mortgage. It is alleged in the complaint that at the time of the delivery of said deed it was intended as security for money then and thereafter to be advanced by the plaintiff bank to the defendant Wesley Case; that in pursuance of said agreement the plaintiff loaned to the defendant Case the sum of $2,300 on February 21, 1902, and the sum of $1,200 on April 15, 1902. Plaintiff alleges that it advanced to defendant under said agreement between the 15th day of April, 1903, and the beginning of the action, various other sums aggregating $714.91, for all of which the said deed was to stand as security, and prays that the said deed be foreclosed as a mortgage. The pleadings are exceedingly voluminous, and it seems to us that no useful purpose would be served by an attempt to recapitulate the allegations of the complaint and answer. The answer contains a general denial, except as to matters specifically admitted.

The only portions of the pleadings in any manner material to the question raised on this appeal are certain allegations in the answer charging fraudulent conduct on the part of the plaintiff

bank, which allegations were expressly withdrawn by defendant's counsel at the opening of the trial. Counsel for defendant Aupperlee then stated to the court as follows: "I will say at this time to the court that in drawing these pleadings I never had met Mr. Aupperlee until after they were drawn, and I understand that the bank was claimed to have received this money as a trust fund. That was an error, and we do not claim that. We claim, however, that the bank knew that it was trust funds. We do not claim that they were trustees as to the Minnesota lands." The case appears to have been tried by the court upon the theory that the defendant had entirely withdrawn the allegation of fraudulent conduct on the part of the plaintif, and no findings of fact were made touching these allegations. The plaintiff, who is appellant here, assigns as error the failure of the trial court to make findings of fact and conclusions of law upon these allegations of fraud. But, inasmuch as the claim of fraudulent conduct of plaintiff appears to have been entirely abandoned by the defendant, both at the beginning of the trial and throughout the introduction of the evidence, we do not think the failure of the court to make such findings is error of which the plaintiff can complain; and, as this is the only assignment which in any manner relates to the pleadings, no further attention need be paid to them.

The findings of fact and conclusions of law are as follows:

"(1) That in the fall of 1900 an agreement was made by and between the defendant John A. Aupperlee and the defendant Wesley Case, whereby the defendant John A. Aupperlee was to place in the hands of the defendant Wesley Case the sum of seven thousand dollars ($7,000), to be used by defendant Wesley Case in purchasing land in Minnesota, taking deeds therefor in his own name as trustee, the said John A. Aupperlee to be the beneficiary of said trust, but not to be named as such in said deed of said land, said land to be afterwards sold by said Wesley Case, as such trustee, and the proceeds thereof divided, said Wesley Case to receive two-ninths and said John A. Aupperlee to receive seven-ninths of such proceeds.

"(2) That pursuant to said agreement, and in said fall of 1900, said John A. Aupperlee did place in the hands of and

furnish to said Wesley Case the sum of seven thousand dollars ($7,000) for the purpose of purchasing said Minnesota lands.

"(3) That after receiving said sum of seven thousand dollars ($7,000), and prior to the times hereinafter mentioned, the said Wesley Case did, pursuant to said agreement, purchase with said seven thousand dollars ($7,000) certain lands in Minnesota, taking deeds therefor to himself therein described as 'Wesley Case Trustee,' or 'Wesley Case, Trustee,' in some of the deeds the comma being insterted between 'Wesley Case,' and 'Trustee,' and in others not, and, after taking said lands and prior to the times hereinafter mentioned, said Wesley Case sold a part of said lands to customers found and procured by said John A. Aupperlee, and received the money paid therefor to be by him, the said Case, paid over to persons from whom the said Case had purchased the said Minnesota lands as part payment of the balance of purchase price thereof remaining unpaid, but that the said Case never so applied said money last above described.

"(4) That on January 20, 1902, the said Wesley Case sold all of said Minnesota lands, except the part hereinbefore mentioned as sold to customers found and procured by the said John A. Aupperlee, for the total sum of $10,259.82, and received therefor the total sum of $5,848.46 in four checks drawn by the purchaser, J. M. Elder, upon the First National Bank of Brainerd, Minnesota, payable to the order of 'Wesley Case, Trustee.'"

"(5) That the balance of said total sum of $10,259.82 was paid by said purchaser to persons to whom a balance of purchase price owing on said lands was due by the said Wesley Case, as such trustee, and to complete and perfect the title therein to said purchaser.

(6) That the sum of $5,848.46 was less than seven-ninths of the total sum received from the sale of said northern Minnesota land by the said Wesley Case, the said Wesley Case having previously received from the sale of said lands previously sold to the customers found by said Aupperlee, as hereinbefore in these findings mentioned, more than two-ninths of said total sum received by the said Wesley Case for said northern Minnesota lands, and more than his share as agreed by said contract.

"(7) That the checks issued by said J. M. Elder, purchaser of said lands, to said Wesley Case, as hereinbefore in finding 4 set forth, were four in number. One of said checks was for $5,000, one for $22.36, one for $750, all dated January 20, 1902, at Brainerd, Minn., and one for $76.10, dated February 15, 1902, at the same place, and that the said four checks aggregated the said sum of $5,848.46 as above found.

"(8) That of the said checks two out of the four, to wit, the first and last in the last paragraph above described were indorsed by said Wesley Case, as follows: 'Wesley Case, Trustee,' and handed by him to the plaintiff bank, and that the plaintiff bank collected and received the full amount of said checks, viz., the total sum of $5,076.10.

"(9) That at the time said two checks were indorsed and handed by said Wesley Case to said plaintiff bank the said bank had notice that the said Wesley Case in selling said land and receiving said checks was acting as a trustee, and that the said John A. Aupperlee had furnished the money to purchase said lands to the said Wesley Case, and was a beneficiary of said trust and as such was interested in said checks, and the money or moneys which might be thereon collected; but did not at said time know to what extent said Aupperlee was so interested, or just how much of the money called for by said checks was his.

"(10) That at the time of handing the said checks to said plaintiff bank the said Wesley Case had been a customer of and a depositor in and had an account with said bank; and, as the said bank at said time well knew, the said Wesley Case was a man of very limited financial means, and not at all likely to have such a sum of money as the check of $5,000 called for as his own, and, as the said bank at said time well knew, the said Wesley Case was at said time a man whose notes even for small sums not exceeding $50 would not be considered good by banks, and, as the said bank at said time well knew, said Wesley Case had formerly conducted a very small grocery business at Windom, Minn., the place where said bank was located, and, as the said bank at said time well knew, said Wesley Case had not made a success of said

Col. 25 S. D. 6.

business, and had sold the same out and gone into the real estate business, and, as the said bank at said time well knew, said Wesley Case had no property of his own entitling him to credit, and as the said bank at said time knew at said time of depositing said checks the account of said Wesley Case was overdrawn in said bank, and that all the aforesaid facts relating to the business history and financial responsibility of the said Wesley Case were at the time of his handing said checks to said bank well known to said plaintiff bank.

"(11) That plaintiff bank had the notice and knowledge in the preceding paragraph set forth on said January 20, 1902, and, having such notice and knowledge, credited said Wesley Case in his account in said bank with the said sum of $5,000 called for by the said check hereinbefore described, and that at the time when said check was so credited, and previous to such credit being given, said Wesley Case had overdrawn his said account with said bank to the extent of $196.53, and upon said credit being given the balance of the said account stood in his favor to the extent of $4,803.47.

"(12) That the said Case made a few more deposits and received more credits, among them the check for $76.10 on February 17, 1902, for said check additional calling for that sum, and between the giving to him on his said account of said credit of $5,000 and February 21, 1902, and during such intervening period, drew divers checks upon said bank, which were paid by said bank and charged to his account.

"(13) That on February 21, 1902, and previous to the transactions hereinafter mentioned, the balance of said account stood in favor of said Wesley Case in the sum of $856.72. That on February 21, 1902, the said Case made a note to the said bank in the sum of $2,300 and said sum was credited to him on said account, and he then obtained from said bank a draft for $2,850 and said draft was charged against him on said account on said date, leaving the balance still in his favor of $306.72.

"(14) That said Wesley Case's account with plaintiff bank commenced on September 23, 1901, and ended on September 29, 1903, and the total amount of credits to said Wesley Case theron

was $18,168.63, the total amount of debits amounted to $18,539.28, and the said sum of $5,000 and $2,300 are the two largest sums credited to said Wesley Case on said account.

"(15) To secure the payment of said $2,300 note the said Wesley Case made the deed mentioned in paragraph 4 of plaintiff's complaint.

"(16) That said deed was in fact a mortgage, although absolute in form, and was intended and agreed by and between the parties thereto to be merely security for the payment of said sum of $2,300 with interest thereon at the rate of 8 per cent, per annum from January 1, 1903, and for no other sum or sums, and it was agreed between the said Wesley Case and said plaintiff bank at the time plaintiff bank accepted said deed and gave said Case credit for the sum of $2,300 that plaintiff bank would not cause said deed to be recorded, it being understood between the said Wesley Case and said bank at said time that the lands mortgaged by said deed would soon be sold and said note paid out of the proceeds of said sale.

"(17) No agreement was ever made between plaintiff bank and said Wesley Case to the effect that such deed should secure the payment to said bank of any other sum or sums of money than said sum of $2,300 and interest, except as hereinafter in the twentieth of these findings appear.

"(18) That the land described in said deed, and which was in law and in fact a mortgage, and mortgaged thereby, was purchased by said Wesley Case, and paid for, so far as he did pay for the same, with funds in his hands held by him as such trustee, and being a part of the seven-ninths of the money received by said Wesley Case from the sale of said lands in Minnesota belonging to said John A. Aupperlee, and a part of said Aupperlee's seven-ninths of the proceeds of said lands, and the said plaintiff bank at the time it accepted said deed as such security had notice or knowledge sufficient to have put it on inquiry, and by inquiry it could have learned that said lands were purchased with and paid for, so far as they were paid for, with money really belonging to the said John A. Aupperlee, said money being a part of the said $5,000 called for by said check for said amount credited to said

Wesley Case on his said account as aforesaid, drafts having, after such credit was given, been issued by said plaintiff bank to pay the part of such purchase price of said lands paid by said Wesley Case at the instance and request of said Wesley Case, and charged against him on said account.

"(19) That said John A. Aupperlee never authorized the said Wesley Case to deposit the proceeds of the sales of said Minnesota lands received by said Wesley Case in his own name in any bank, or to reinvest in other lands or to do anything with them other than account for them to said John A. Aupperlee pursuant to said agreement between the said Auperlee and said Case, and to pay over to him, the said John A. Aupperlee, promptly his seven-ninths thereof, and did not at any of the times mentioned in any of the preceding findings herein know that said Wesley Case had sold any of said Minnesota lands other than the part mentioned in the third of said findings herein.

"(20) That the sum total of all the drafts issued by the plaintiff bank at the instance and request of said Wesley Case to pay part of the purchase price of the lands mentioned in plaintiff's complaint, and which drafts were used for said purchase by said Wesley Case, including the said draft for $2,850, did not exceed the sum of $5,000, and that on April 15, 1903, the said plaintiff bank at the instance and request of said Wesley Case issued still another draft, the same being for the sum of $1,200, and the said John A. Aupperlee, by his agent, received said sum of money and applied it in payment of mortgages given by said Wesley Case in part payment of the purchase price of the said lands in the complaint described at the time said Case bought said lands. In payment of said $1,200 draft the said Wesley Case made to the plaintiff bank the promissory note in paragraph 6 of the complaint mentioned, and thereby promised to pay to the plaintiff bank or order on May 15, 1903, the said sum of $1,200, with interest thereon until paid at the rate of 10 per cent. per annum from April 15, 1903. At the time of the issuing of said draft and the making of said note, they being part of one and the same transaction, the said Wesley Case did agree with the said plaintiff bank that the said deed mentioned in the third and fourth

paragraphs of plaintiff's complaint should be held as collateral security for the payment of said note and any other indebtedness or liability then existing or thereafter created on his part to the said bank.

"(21) On August 20, 1902, the said Wesley Case by an instrument in writing, his wife joining therin as his co-grantor, granted, bargained, sold, released, and quitclaimed to the said John A. Aupperlee the same lands described in said deed to the said bank, and said instrument in writing, viz., the deed mentioned in finding 15, and the one above in this finding mentioned, were so acknowledged as to be and were recorded in the office of the register of deeds of Clark county, state of South Dakota, the deed to plaintiff bank on August 9, 1902, in Book V of Deeds, on page 192, that to said John A. Aupperlee on August 25, 1902, in Book O of Deeds, on page 511.

"(22) Except as hereinbefore appears, the said John A. Aupperlee has never received anything whatever from said Wesley Case or from the proceeds of said Minnesota lands; but he has, in addition to said $1,200 furnished by said bank as shown in the preceding findings, paid out as interest or on installments of principal of the sums secured by said purchase price mortgages mentioned in said findings, or as taxes on the lands aforesaid to protect said lands from being sold to pay such interest, installments, or taxes divers sums amounting now with interest from the respective dates of payment to the sum of $3,322.19."

## Conclusions of Law.

"(1) That the plaintiff is entitled to have the said deed in paragraphs 3 and 4 of the complaint mentioned adjudged and decreed to be a valid mortgage to the extent of and securing the said sum of $1,200, with interest thereon at 10 per cent. per annum from April 15, 1903, on said lands therein described, and to have a lien under and by virtue thereof to such extent. * * *

"(4) That said John A. Aupperlee was at the time of the commencement of this action and at the time of the taking of said deeds by said Case to the lands in plaintiff's complaint the real owner of the fee title of the lands described in plaintiff's complaint."

The ninth of the foregoing findings is fully sustained by the testimony of S. A. Pease, a witness for defendant, who testified: "I talked with W. A. Smith, cashier of appellant bank, in the fall of 1901. Told Smith that Aupperlee was uneasy about the northern Minnesota lands Case was handling for him, and desired that I should inquire of the officers of the bank as to the kind of man Case was. Smith told me Case was an honest man; that he had always found him straight; that he had an account with the bank. He (meaning Smith) said he knew Aupperlee put up the money at the time the lands were bought, and his whole conversation was based on that understanding. Smith said Case was a man of no large means, but honest. I told Smith Aupperlee had seven-ninths interest in the northern Minnesota lands, and Smith said he knew Aupperlee's money paid for the land, and also knew Case did not have the money to be handling such a deal." Every other finding is supported by practically undisputed evidence. Out of the $5,000 received by Case for the Minnesota lands, and deposited in plaintiff bank, the sum of $1,439 was paid by Case on February 5, 1902, on the purchase price of the Dakota lands.

The record fails to show the exact date on which Case purchased the South Dakota lands, but it does show that during the last week in January and the first week in February he had given back as part of the purchase price of said lands mortgages thereon aggregating some $4,399 which were then of record. Case had become the owner of these lands which were paid for in part at least, as plaintiff had reason to know, with Aupperlee's money received by Case from the Minnesota lands, and which Case had deposited in plaintiff bank. The question presented is whether the plaintiff, knowing these facts, will be protected in making a loan on lands which it knew had been purchased, and paid for with trust funds and purchase-money mortgages. Such a transaction might be valid in so far as it covered any interest Case actually had in these lands. But, to reach and appropriate the interest of Case, it would be necessary for plaintiff, on whom rests the burden of proof, to show what that interest was. This the plaintiff has failed to do by any evidence in the record. Presumptively the cash payment

by Case out of the $5,000 which it is shown amounted to $1,439, together with the mortgages given back by Case and wife in the sum of $4,390 and which were of record as shown by the evidence and were part of the purchase price, would constitute the whole consideration paid for the Dakota lands. On February 21, 1902, the plaintiff loaned Case the sum of $2,300, and took a deed of these lands as security; and the question presented is whether such lien can be enforced as against the defendant Aupperlee. From the record it appears that the trial court awarded the plaintiff a decree for $1,200 being for a loan made to Case by plaintiff on April 15, 1903. It appears that the defendant Aupperlee, with knowledge of all the acts of Case, received the proceeds of this $1,200 loan, and applied the same in payment of the mortgages placed on the land by Case. On August 20, 1902, Aupperlee had accepted a deed from Case and wife for the South Dakota lands in a settlement with Case. The court apparently held that Aupperlee, having received the amount of this loan from Case, after he became the owner of the land and with knowledge of all the facts, had assented to that partciular act of Case, and therefore the plaintiff was equitably entitled to recover the amount from Aupperlee. He has not appealed from that judgment, and we are not called upon to question it. So far as this appeal is concerned, it is wholly immaterial upon what theory of fact or law the trial court acted in awarding this recovery, nor is the appellant in a position to question it. The plaintiff also claims to have advanced to Case after April 15, 1903, various sums aggregating $714.91, for which recovery is sought. But as the record clearly shows that the plaintiff had full knowledge of all the facts from conversations with Aupperlee and Gessel long before these amounts were advanced, it is plain that plaintiff could not recover such advances.

The remaining question is whether plaintiff is entitled to a decree as to the $2,300 loaned to Case on February 21, 1902. It must be conceded that the rights of plaintiff under this deed are no other or different than would have accrued under a mortgage taken to secure the loan. The question whether the bank would be liable to Aupperlee for trust funds placed by him in Case's hands, and deposited in plaintiff bank, and thereafter withdrawn and misapplied by Case, is not presented by this appeal.

The real question is: In what manner the plaintiff may deal with Case as to the lands bought by him in whole or in part with the funds which the bank knew did not belong to him? If plaintiff is right in the contention that it was not bound to see that Case did not misapply trust funds, it was also wholly immaterial what Case might do with the $2,300 borrowed of the bank. There was no agreement that Case should apply the $2,300 in payment for these lands. Mr. Smith, plaintiff's cashier, testifies that he figured there was a considerable margin in the value of the lands between the prior mortgages and the $2,300 loan made to Case. It therefore was wholly immaterial to the bank what use Case intended to make of the money loaned. It does appear from the bank record in evidence that Case had overdrawn his account in various sums and that plaintiff had applied Case's deposits, not only of his own money, but Aupperlee's as well, in payment of such overdrafts, and not only this, but plaintiff had used these same deposits to pay notes given by Case to the bank, which were charged to Case's account as bills receivable. On January 22, 1902, the very day Case was credited with the $5,000 of Aupperlee's money, we find Case's account charged with bills receivable, agregating $1,098.09. Aupperlee's money paid these debts of Case to the bank, and the bank must have known such to be the fact. It seems to us it may be fairly assumed that Case made this loan of $2,300 to replace the trust fund thus wrongfully appropriated by himself and the bank, and that, when Case's account was credited with the proceeds of the loan, that money at once became trust money in lieu of any funds of Aupperlee which had been appropriated by the bank or by Case. Nor is such view inconsistent with the evidence in the record. Plaintiff, with knowledge of the acts of Case and Aupperlee's rights, could not make Aupperlee its debtor without his knowledge or consent by loaning money on land which it knew was the property of Aupperlee, but was held by Case as a resulting trust.

Civ. Code, § 303, provides: "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

Section 304: "No implied or resulting trust can prejudice the rights of a purchaser or incumbrancer of real property, for value and without notice of the trust."

Suppose Aupperlee were seeking to enforce a resulting trust in his favor as against Case and the plaintiff bank. It is clear that under Civ. Code, § 304, a purchaser and incumbrancer stand on precisely the same ground. Would a purchaser from Case with notice of Aupperlee's rights be entitled to protection, even though he had paid a full consideration for the land? In 15 Am. & Eng. Enc. Law, p. 1200, the rule in harmony with Civ. Code, §§ 303, 304, is thus stated: "The general principle of courts of equity, that where the equities are equal the law will prevail, is to be applied in determining against whom resulting and constructive trusts will be enforced, and it is a well-settled rule that such trusts will not be enforced against a bona fide purchaser of the legal title from the original trustee for a valuable consideration and without notice of the equity of the person in whose favor the trust is claimed. On the other hand, it is equally well settled that he who acquires the legal title to property with notice of an equity in favor of a third person takes subject to such equity, and therefore a resulting or constructive trust will be enforced against a subsequent purchaser of the legal title, with notice of the trust, whenever the trust would have been enforced against the person from whom the purchaser acquired his title, irrespective of whether the purchase was based upon a valuable consideration." Among the cases there cited is Luscombe v. Grigsby, 11 S. D. 408, 78 N. W. 357, which fully sustains the doctrine. "A deed of a trustee in violation of his trust is invalid, unless made with the consent of the beneficiaries." Cooper v. Harvey, 21 S. D. 471, 113 N. W. 717; Warnock v. Harlow, 96 Cal. 298, 31 Pac. 166, 31 Am. Stat. Rep. 209.

But it is urged by appellant that the $2,300 loaned to Case by plaintiff on the alleged security of these lands went into and was paid as a part of the purchase price of the lands, and therefore plaintiff should be entitled in equity to a return thereof. It is clear that the deed given to the bank by Case as security was absolutely void as against Aupperlee. Hence the only possible theory

upon which the bank could invoke the aid of a court of equity would be to ask the court to decree that Case held these lands as a resulting trust for the benefit, not only of Aupperlee, but also of the bank, to the extent that the bank had paid the purchase price. But, when this money was loaned to Case by the bank and placed to his credit, the bank ceased to have any control over or interest or ownership in it. It was Case's money, to do with as he chose. The bank had absolutely parted with it, and all interest in or claim to it, in exchange for Case's note and a void security. There is nothing in the record to show that this money had the character of a trust fund as money of the bank in Case's hands. It was simply borrowed money. Suppose Case had invested the money borrowed of the bank in other lands. Could it be contended for a moment that the bank acquired an equitable interest in such lands, because it once owned the money with which Case purchased them? In what respect does such a transaction differ from the case at bar? Loaning money to a borrower, and placing funds in the hands of an agent, are essentially different transactions. A loan of money to another without any misrepresentation or fraud on the part of the borrower merely creates the relation of debtor and creditor, and we know of no rule of equity which may transmute or transform such a simple transaction into a trust, or create the relation of trustee and cestui que trust between the borrower and the lender.

And the court did not find, nor does the evidence satisfactorily show, that this $2,300 was used by Case to pay for these lands. The burden of proof to show such fact in any event certainly rested on the plaintiff under every rule of equity. But the evidence on that point leaves it in doubt whether any of this $2,300 was paid on account of these lands. The evidence and findings of fact show conclusively that the lands were held by Case as a resulting trust, and in equity belonged to Aupperlee. Luscombe v. Grigsby, supra. And, if the bank be held innocent of any wrong in its dealings with this trust fund, the burden would rest upon it to show by clear and satisfactory evidence that its money actually was used to purchase lands the title to which was taken by Case. This the bank has not done, and it must

therefore fail of this relief in a court of equity. Warnock v. Harlow, supra.

We find no reversible error in the record. The judgment and order of the trial court are affirmed.