(Surrogate's Court, New York County. November, 1910.)

1. EXECUTORS AND ADMINISTRATORS (§ 104*)—PROCEEDS OF SALE OF LAND—DEPOSITS—INTEREST.

Where an executor sells land under a power of sale given in the will, depositing the proceeds to his own credit in banks, and the balances in the banks at his death are a part of such deposit, his executors must account to the legal representatives of the estate of which he was the executor for the amount of such balances with the interest which they might have received if they had deposited the funds with a trust company.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 423–432; Dec. Dig. § 104.*]

2. EXECUTORS AND ADMINISTRATORS (§ 272*)—CLAIMS—FUNDS APPROPRIATED BY DECEDENT AS EXECUTOR.

Where an executor deposited proceeds of a sale of realty under a power of sale, in his own name, and used part of the proceeds for payment of taxes and for repairs on his individual realty, and his executors sold the realty, the proceeds of such sale is chargeable with the amount so appropriated by decedent executor, in favor of the estate of which he was executor, the amount paid for taxes with interest at 6 per cent. from the time of payment to date of sale of the land, and the amount disbursed for repairs without interest.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1052–1057; Dec. Dig. § 272.*]

3. EXECUTORS AND ADMINISTRATORS (§ 272*)—CLAIMS—PROPERTY AVAILABLE FOR PAYMENT—FUNDS APPROPRIATED BY EXECUTOR.

Disbursements made by the executor from such deposit for coal and electric light for tenants and for fire insurance of his individual realty

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

are chargeable to the income from such realty and not to the proceeds of the sale thereof; the estate of which he was executor standing only as an unsecured creditor.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1052–1057; Dec. Dig. § 272.*]

4. EXECUTORS AND ADMINISTRATORS (§ 272*)—CLAIMS—FUNDS APPROPRIATED BY EXECUTOR.

Where disbursements from such deposit made by the executor for premiums on his life insurance formed only a part of the premiums paid thereon, the estate of which he was executor may elect to share in the proceeds of the policies in the proportion that the payments from the estate bear to the value of the policies when the payments were made.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 272.*]

5. EXECUTORS AND ADMINISTRATORS (§ 104*)—ACCOUNTING—INTEREST.

The estate of which decedent was executor as to the amount of the deposit owing it from decedent's estate and as to which it was an unsecured creditor was entitled to interest at 6 per cent. from the time that decedent received the money and deposited it to his own account to be computed with semiannual rests.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 423–432; Dec. Dig. § 104.*]

Proceedings upon the judicial settlement of the account of Anna Clark and another, executors of Nathan E. Clark, for the acts of Nathan E. Clark, as executor of Jacob Rauth. Account settled.

Clarence M. Lewis, for petitioner.
Herman Gettner, for objecting parties.

THOMAS, S. The present accounting is by the executors of Nathan E. Clark, deceased, and concerns the acts and doings of said Nathan E. Clark as executor of Jacob Rauth, deceased. Nathan E. Clark, as the executor of Jacob Rauth and under a power of sale granted to him in the will of Jacob Rauth, sold the premises No. 104 East Eighty-Fifth street and deposited the proceeds of such sale to his own credit in the Twelfth Ward Bank and in the Riverside Bank. It sufficiently appears from the agreed statement of facts that the balance in the Twelfth Ward Bank and that in the Riverside Bank at the time of his death were parts of the moneys improperly diverted from the estate of Jacob Rauth. The aggregate of these sums, amounting to $1,954.27, must be paid to the legal representative of the estate of Jacob Rauth, and the executors of Clark must also be charged with the interest which they might have received from the amount if they had deposited the moneys in a trust company. I fix this interest at 2 per cent., to begin 30 days after the executors of Clark qualified as such.

Disbursements were made by Clark from the moneys of the Rauth estate, improperly deposited to his own credit as already stated, for taxes and repairs on and to his own individual real estate in East Ninety-First street, which real estate has been sold by the accountants, his executors, since his death. The payments for taxes relieved that real estate from liens, and part of the proceeds of that real estate now in the hands of Clark's executors represents that money, with interest

thereon at 6 per cent. from the time of payment to the time of the sale, which will be directed to be paid to the legal representative of Jacob Rauth. The moneys paid by Clark for repairs increased the value of the Ninety-First street property to the extent of the moneys so disbursed, and that amount, but without interest, will also be paid to the legal representative of Jacob Rauth. Disbursements for coal consumed in keeping the tenants of the Ninety-First street house warm, for electric light furnished for their comfort, and for fire insurance to indemnify Clark against possible loss by fire, were represented by the income of the Ninety-First street property and not by the money received on its sale. As to these the estate of Jacob Rauth must stand as an unsecured general creditor.

Clark used certain of the moneys of the Rauth estate in making payments of premiums on two insurance policies upon his own life, which policies were payable to himself or his own estate. Since his death the amounts of these policies, to wit, $20,000, less the amount of loans, aggregating $6,170, obtained from the insurance companies upon them by him, have been paid by the insurance company to his executors, and this money is now in their possession. The payments of premiums made out of the trust funds were the last payments of premiums made on these policies, and they were instrumental in keeping the policies alive. The use by Clark of the moneys of the Rauth estate in making payments on the policies on his life for the benefit of his individual estate was a breach of trust. It was competent for the legal representative of the Rauth estate to elect either that the Rauth estate become a creditor by the transaction, with a lien upon the policies of insurance for the amount of the premiums advanced from that estate, or to adopt the transaction as one giving to the Rauth estate the rights of a participant in the proceeds of the policies. It happened that the payment of these premiums was a good speculation, and the Rauth estate now elects, as it has a right to do, to demand a share of the resultant profits. If the entire amount of the premiums which formed the price for the resultant payment of the policies had come from the Rauth estate, that estate would have been entitled to the whole of the proceeds upon the principles laid down in Holmes v. Gilman, 138 N. Y. 369, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463. Since these premiums formed only a part of the consideration for the policies, the Rauth estate may justly claim a right to share in those proceeds in the proportion that the payments from the Rauth estate bore to the value of the policies at the time those payments were made. This result the representatives of the Rauth estate propose to accomplish by treating the aggregate of premiums paid by Clark from his own funds as the value of the interest of Mr. Clark in the policies at the time when he made the improper use of the Rauth moneys, and this method of computation would seem to have been approved by the Appellate Division of this department in Dayton v. H. B. Claflin Co., 19 App. Div. 120, 45 N. Y. Supp. 1005. In this computation it will be noted that no interest on the earlier payments is taken into consideration, nor, as an offset to such interest, has the value of the insurance that Mr. Clark enjoyed because of the earlier payments of premiums been accorded any weight. The facts in this case differ from those in

the case last cited, in this, that when Mr. Clark used the money of the Rauth estate the premiums previously paid by him had to the extent of $6,170 been returned to him in the form of loans on the policy, and when the Rauth money was used by him his 'interest in the adventure represented by the policies had to that extent been reduced. The theory upon which the representative of the Rauth estate asks to share in the benefit of these policies is in my judgment exceedingly conservative, and has the merit of being supported by positive, direct, and controlling authority. Its application will require a determination that the Rauth estate is entitled to $11\frac{1}{5}$ per cent. of the total amount received under the policies of insurance, to wit, $20,000, and that $11\frac{1}{5}$ per cent. of that amount, or $2,300, belongs to the Rauth estate, with interest at 2 per cent. since the time of the collection of the insurance.

As a result of all these direct charges in favor of the Rauth estate, that estate is still an unsecured creditor for a considerable sum, and will be entitled to interest on this balance at 6 per cent. from the time when Clark received the moneys and deposited them to his own account; such interest to be computed with semiannual rests.

Tax costs and settle decision and decree on notice.