714 P.2d 32

**La Iad DeLANCEY, Plaintiff-Respondent,**

v.

**Earl R. DeLANCEY, Jr., Defendant-Appellant.**

No. 15792.

Supreme Court of Idaho.

Feb. 6, 1986.

**64**

Larry C. Ashcraft, Mountain Home, for defendant-appellant.

Francis H. Hicks, Mountain Home, for plaintiff-respondent.

HUNTLEY, Justice.

Respondent La Iad DeLancey obtained a default divorce from appellant Earl R. De-Lancey, Jr., who neither appeared nor had representation in the divorce proceedings. The Decree of Divorce, which La Iad's attorney drafted, distributed a pickup truck to Earl and a car to La Iad. The decree obligated Earl to pay community indebtedness on the car of $6,300, to be paid in monthly installments of $197, with the further proviso that Earl pay $100 per month alimony upon completion of the car payments.

The DeLanceys had purchased the car during their marriage. At the time of purchase Earl bought a policy on the car, naming himself as the insured. At the divorce proceeding La Iad failed to ask the court to order a modification of the policy replacing Earl as the named insured with herself.

After La Iad obtained the car as her sole and separate property pursuant to the decree, an accident destroyed the car. Earl received the insurance proceeds for the car's book value, less the deductible. He paid $5,515.77 to the lienholder, discharging the debt on the car, and gave the remaining $1,384.23 to La Iad. Earl then discontinued his $197 monthly payments on the car. La Iad had paid one insurance premium; the one immediately preceding the accident.

La Iad went to magistrate court demanding Earl show cause for his discontinuance of the $197 monthly payments to La Iad. The magistrate judge (who signed the original decree) found the decree unambiguously obligated Earl to pay the debt on the car. The court held Earl's obligation terminated with the debt.

However, the district court to which La Iad appealed reversed the magistrate court. It reasoned La Iad's payment of a single insurance premium entitled her to the insurance proceeds because she must have "continued the insurance to insure that her car would be replaced; and *not* to pay off her former husband's debt, in the event of a loss such as occurred here." (Emphasis in original.)

La Iad considers herself entitled to the insurance proceeds under two alternative theories. First, she argues that the court which issued the decree intended her to have a car, or the money to buy a new one if the car were wrecked. Second, she argues her payment of a single insurance premium entitles her to the insurance proceeds. We deal with each issue in turn.

## I. INTERPRETATION OF THE DECREE OF DIVORCE

La Iad argues that the magistrate who entered the Decree of Divorce intended La Iad to have a car. After the accident, she had neither a car nor money to pay for a

new one, which in her view violated the intent underlying the decree. To resolve this issue we must interpret the Decree of Divorce.

■ The same rules of construction applicable to contracts and written documents in general apply to our interpretation of the decree. *Evans v. City of American Falls, Idaho,* 52 Idaho 7, 18, 11 P.2d 363, 367 (1932). Our standard of review of the lower courts' interpretation of the decree depends upon whether the decree is ambiguous. Interpretation of an ambiguous document presents a question of fact. *Cf. Roberts v. Hollandsworth,* 582 F.2d 496, 499 (9th Cir.1978) (contract case); *Pollard Oil Co. v. Christensen,* 103 Idaho 110, 115, 645 P.2d 344, 349 (1982) (contract case). On the other hand, interpretation of an unambiguous document is a question of law. *Cf. Suchan v. Suchan,* 106 Idaho 654, 660, 682 P.2d 607, 613 (1984) (contract case); *Beal v. Mars Larsen Ranch Corporation, Inc.,* 99 Idaho 662, 668, 586 P.2d 1378, 1384 (1978). Determination of whether a document is ambiguous is itself a question of law. *See, Pocatello Industrial Park, Co. v. Steel West, Inc.,* 101 Idaho 783, 789, 621 P.2d 399, 405 (1980) (contract case).

■ We turn to the decree's relevant provisions to determine whether the decree is ambiguous. If a document is reasonably subject to conflicting interpretation, then it is ambiguous. *Rutter v. McLaughlin,* 101 Idaho 292, 293, 612 P.2d 135, 136 (1980). Certain provisions in the decree distribute one vehicle to each party: a pickup truck to Earl and a Ford Mustang automobile to La Iad. A subsequent provision states:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the defendant shall pay the community *indebtedness* of the parties including the following:

. . . .

*Pioneer Federal Credit Union, encumbrance* on 1981 Ford Mustang—Amount: $6,300.00. Monthly payment: $197.00. (Emphasis added.)

These provisions unambiguously distribute the car to La Iad and obligate Earl to pay the specified debt thereon owed to the specified lienholder. The decree is not reasonably subject to any other interpretation.

La Iad argues the trial court's interpretation of the decree violated its underlying intent. The trial court held Earl's obligation under the decree was discharged upon his payment of the lien on the car with the insurance proceeds. Under this determination La Iad would have neither a car nor the money to obtain one, which La Iad asserts violates the intent underlying the decree; that each party have a vehicle.

■ However, a court should construe judgments to give effect to every word and part. *Boundary County, Idaho v. Woldson,* 144 F.2d 17, 20 (9th Cir.1944) *cert. denied,* 324 U.S. 843, 65 S.Ct. 678, 89 L.Ed. 1405 (1945). The decree directs Earl to pay the "indebtedness" of the parties owed to "Pioneer Federal Credit Union" for its "encumbrance" on the car. This language conditions Earl's obligation to La Iad upon the existence of a debt on the car. Since the insurance proceeds discharge the debt, the obligation of Earl based on that debt was also discharged. For this court to find Earl still obligated to La Iad for payments on the car, as La Iad urges, would require us to ignore the plain language of the decree or supply additional terminology. We cannot interpret the decree to place on Earl an obligation not required by the decree. *Cf. J.R. Simplot Co. v. Chambers,* 82 Idaho 104, 110, 350 P.2d 211, 214 (1960) (contract case).

## II. PREMIUM PAYMENT

Earl contends on appeal that because the decree said nothing about insurance, the policy naming Earl as the insured remains unmodified and gives Earl the right to the insurance proceeds. Earl denies La Iad's payment of a single premium entitles her to the proceeds, regardless of her intent in making the payment.

■ The district court cited no authority for its holding that La Iad's payment of

a single premium entitled her to the insurance proceeds. This court can find no authority for the district court's holding. In fact, the general rule is that one not a party to an insurance contract who voluntarily pays premiums acquires neither an interest in the proceeds nor a right to reimbursement of the premiums. *Proudley v. Fidelity & Guaranty Fire Corp.*, 345 Pa. 385, 29 A.2d 48, 50–51 (1942); *Feely v. Lacey*, 133 Mont. 283, 322 P.2d 1104, 1111 (1958). On the other hand, equity may reimburse the payor of premiums for the amount of the premiums if she reasonably believed herself to be a beneficiary under the policy. *Perry v. Perry*, 484 S.W.2d 257, 260 (Mo.1972). La Iad did not raise the issue of her entitlement to the reimbursement of her single premium payment either in the courts below or in this Court. We therefore decline to rule on that matter. The only situation we find in which a third party's payment of insurance premiums might entitle her to the proceeds occurs where the premium amount was misappropriated from the third party and paid without her consent. Even in these cases the third party has a right only to those proceeds in proportion to the premium payments. *Re Clark*, 69 Misc. 527, 127 N.Y.S. 888, 890 (1910); M. Rhodes, 6 Couch Cyclopedia of Insurance Law, § 31:173 at 214–15 (2d rev. ed. 1985). La Iad does not allege the premium payment in her name was made with misappropriated funds or otherwise without her consent. Therefore, the district court erred in holding La Iad entitled to the insurance proceeds. Reversed. Costs to appellant. No attorney fees awarded.

DONALDSON, C.J., and BAKES, J., concur.

SHEPARD, Justice, dissenting.

Because I take a different view and a different analysis than that of the majority, I respectfully dissent. Plaintiff was awarded as her sole and separate property, an automobile worth approximately $7,000.00, and it was clearly the intent of the divorce decree that she was to receive that vehicle free and clear of the then existing encumbrance at Pioneer. That intent is demonstrated by the requirement contained in the decree that the defendant pay off the indebtedness at the rate of $197.00 per month.

It is well established in Idaho that an action for divorce is addressed to the equity jurisdiction of the court. *Rudd v. Rudd*, 105 Idaho 112, 666 P.2d 639 (1983); *Hiltbrand v. Hiltbrand*, 68 Idaho 275, 193 P.2d 391 (1948). Within doctrines to be applied by a court sitting in equity is that of unjust enrichment. In my view the doctrine of unjust enrichment is applicable and should be applied to the circumstances of the instant case. Here, due to the fortuitous circumstance of the defendant being the named insured on the insurance policy covering the vehicle awarded to the plaintiff, the defendant has been unjustly enriched by the amount of the insurance proceeds. Through that unjust enrichment he has been enabled to pay the indebtedness to Pioneer.

On the other hand, although the decree of the court intended plaintiff to have an automobile worth approximately $7,000.00 free and clear of any encumbrance, plaintiff now has no automobile nor the money with which to purchase one. It is my view that plaintiff should be able to acquire an automobile and have the indebtedness thereon paid off by the defendant. To that end I would hold that the Court should require the defendant to pay the plaintiff the sum of $5,517.77 at the rate of $197.00 per month, without interest.

BISTLINE, Justice, voting to affirm the judgment of the magistrate and to vacate the appellate judgment of the district court.

With due regard for the opinions of Justice Huntley and Justice Shepard, it is self-evident that the trial court, Judge John R. Sellman presiding, had the far better grasp of the legal aspects of the controversy. The divorce action went by default, and the plaintiff received exactly the relief which she had prayed for. (Under the decisions of this Court, she could not gain more

where the defendant offers no contest.) As Judge Sellman pointed out, "(1) Plaintiff got the car, and (2) Defendant got the debt. Defendant lived up to his end of the obligation [of the decree], and it was through no fault of his own that Plaintiff no longer has the car." He concluded that "the Court is *without jurisdiction* to re-open the matter to award Plaintiff something not provided for in the Decree."

The issue of jurisdiction is dispositive, putting me at a loss to understand why it is that now three upper echelon jurists have tried to find some other resolution. The divorce action terminated in a final decree on the 15th day of *September, 1981*, other than for the timely filing of post-judgment motions. None were filed. "In this case these time limits [for making post-judgment motions] have long since passed." *Compton v. Compton*, 101 Idaho 328, 612 P.2d 1175 (1980).

A seldom-recognized fact is that when the ball game is over, it's over. In *Perovitz v. Perovitz*, 94 Idaho 453, 490 P.2d 320 (1971), the Court had no trouble in realizing that a divorce action, where there is no provision for alimony, is no more subject to reopening for modification than any other action which is fully terminated. When the trial court's jurisdiction has ended, it has ended. As counsel for defendant pointed out to the Court, the relief here sought by the plaintiff had to be by way of independent action, citing us to *Compton, supra*. An action which is no longer pending is a dead file. My surprise is that only Judge Sellman and I seem to be aware of this rather basic principle.[1] An action which is wholly terminated might be likened unto a streetcar without wheels—it will not carry any passengers anywhere. "There simply is no longer an action pending between the parties and hence the parties are no longer before the Court." *Mercer v. Mercer*, 102 Idaho 816, 641 P.2d 1003 (1982).

---

1. The theory advanced in the opinion authored by Justice Shepard is worthy of comment. Because a divorce action has been said to be on the equitable side of the court, he would do equity and enter a monetary judgment against the defendant. This he could do only by putting aside any notion of jurisdiction which was the sole basis of Judge Sellman's decision—necessarily ignored simply because it cannot otherwise be circumvented.

Justice Shepard presumably paid more attention to the appellate opinion of the district court than to that of the trial court. The closest the district court came to the issue of jurisdiction was to recognize plaintiff's right to bring an independent action—which thought was turned aside because "it is more practical to permit plaintiff, in this divorce proceeding, to enforce the decree requiring defendant to pay the car loan." R., p. 48. Practicality, while in many instances does suggest an expedient route, does not rise to the level of providing jurisdiction where none exists.