**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52461**

| | |
|---|---|
| JENNIFER TIEGS, | ) |
| | ) **Filed: August 29, 2025** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| MICKI TIEGS, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. Diane M. Walker, Magistrate.

Order of the district court, on intermediate appeal, <u>reversed</u> and <u>case remanded</u>.

Bevis, Thiry, Henson & Katz, P.A.; Philip M. Bevis, Boise, for appellant. Philip M. Bevis, argued.

Ludwig, Shoufler, Miller, Johnson, LLP; Jordan S. Ipsen, Boise, for respondent. Jordan S. Ipsen, argued.

---

HUSKEY, Judge

Jennifer Tiegs appeals from the district court's order, on intermediate appeal, affirming the magistrate court's memorandum decision and order regarding Micki Tiegs' motion to enforce the divorce decree and denial of Jennifer's[1] motion for reconsideration. Jennifer argues the district court erred in affirming the magistrate court's order to enforce the divorce decree with respect to the division of the proceeds from the sale of the marital home. Micki argues the district court did not err in affirming the magistrate court's order to enforce the divorce decree. We hold the district court erred in affirming the magistrate court's memorandum decision and order regarding the motion to enforce the divorce decree.

---

[1]   This Court's opinions generally refer to parties by their surnames. However, the parties in this case share the same surname and so for clarity, the Court will identify the parties by their first names. No disrespect is intended by this designation.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jennifer and Micki settled all issues in their pending divorce and, as part of the settlement, agreed to disposition of the marital home. The stipulation was memorialized as joint exhibit 1, with an attached exhibit A. Joint exhibit 1 set forth the terms of the stipulation and exhibit A was a draft property and debt schedule listing the parties' assets and debts and the allocation of those assets and debts. The morning of trial, the parties placed the stipulation on the record, and the trial was vacated. After some further changes to the language, joint exhibit 1 was submitted to the magistrate court and the magistrate court entered a judgment and decree of divorce, incorporating joint exhibit 1 as paragraph 5 of the divorce decree and exhibit A as the final property and debt schedule.

The home was listed for sale, and an offer was accepted. However, the parties had different interpretations of paragraph 5 of the divorce decree, which directed how the proceeds from the sale should be distributed. Jennifer believed that Micki was to pay the costs of the sale and any capital gains taxes from his separate property and that those expenses should not be deducted from the proceeds. Jennifer believed she would receive $1,100,000.00, Micki would receive $200,000.00, and any remaining balance would be divided equally, resulting in Jennifer receiving $1,382,092.28 and Micki receiving $482,092.28, from which he would pay the costs of the sale ($183,274.98) and the capital gains taxes (estimated at $183,360.00), leaving him $114,962.28. Conversely, Micki believed that Jennifer would receive $1,100,000.00, and then the costs of the sale and the capital gains taxes would be paid from the balance of the proceeds. If there was any money remaining after the costs of the sale and capital gains taxes had been deducted, Micki would receive up to $200,000.00; anything remaining after that would be split equally between Micki and Jennifer. Thus, according to Micki, Jennifer would receive $1,198,527.30 and Micki would receive $298,527.29. Based on this disagreement, Micki filed a motion to enforce the divorce decree, and a hearing was held. The magistrate court made factual findings, including calculations based on the sale price and various costs, and ultimately awarded Jennifer $1,198.527.30 and Micki $298,527.30. The magistrate court further ordered Micki to report the capital gains tax on his 2023 tax return; if the taxes were less than the estimated $183,360.00, the parties would equally share the overage. Because Micki could not prospectively pay the taxes, the estimated amount

was placed in his attorney's trust account with payment going directly to the Internal Revenue Service and the State of Idaho.

Jennifer filed a motion to reconsider, arguing that Micki agreed to pay the costs of sale and capital gains taxes from his separate property, so those amounts should not have been deducted from the proceeds of the sale because that made the debt a community debt instead of Micki's separate debt. According to Jennifer, treating the expenses as community debt reduced the amount Jennifer should have received from the sale proceeds. In the meantime, the house was sold, and the proceeds of the sale were placed in Jennifer's attorney's trust account. Micki then requested that he be given the $298,527.30 as ordered by the magistrate court. To comply with the court order, Jennifer agreed to release that amount from her attorney's trust account to be placed in Micki's attorney's trust account to ensure that when taxes were due, they would be paid directly from the trust account.

The magistrate court denied Jennifer's motion to reconsider; Jennifer appealed to the district court. On intermediate appeal, the district court affirmed the magistrate court. Jennifer appeals.

## II.

## STANDARD OF REVIEW

On appeal of a decision rendered by the district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision. *State v. Phipps*, 166 Idaho 1, 4, 454 P.3d 1084, 1087 (2019). For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

Jennifer alleges the district court either failed to address or incorrectly addressed four issues she raised on intermediate appeal. Jennifer raises those four issues to this Court, all of which relate

to the larger issue of whether the magistrate court distributed proceeds from the sale of the marital home in contravention of paragraph 5 of the decree of divorce. Specifically, Jennifer argues that: (1) the magistrate court made a clerical error when it incorrectly used the term "sale proceeds" instead of "costs of sale" in the last two sentences of the first paragraph of the order to enforce, which the district court acknowledged on intermediate appeal but incorrectly determined the error did not affect the outcome of the appeal; (2) the district court did not address Jennifer's argument that the magistrate court incorrectly determined that paragraph 5 of the decree of divorce was identical to paragraph 5 of joint exhibit 1 because the difference clearly indicated that Micki was to pay the costs of the sale and the capital gains taxes from his separate funds; (3) the district court did not address Jennifer's argument that the magistrate court erroneously added "net proceeds" in a footnote on page 2 of the order to enforce, the result of which changed the distribution of the sale proceeds; and (4) the district court did not address Jennifer's argument that the magistrate court referred to remarks noted in the property and debt schedule attached to joint exhibit 1 rather than the property and debt schedule attached to the divorce decree. Jennifer also argues that the district court erred in its application of the invited error doctrine because Jennifer's agreement to release funds from her attorney's trust account to pay for the capital gains taxes was not consent or acquiescence that Micki was entitled to the money but, rather, was entered to effectuate the demand for release of funds made by Micki and ordered by the magistrate court. Finally, Jennifer alleges the district court failed to address Jennifer's argument that instead of ordering a division of proceeds that was inconsistent with paragraph 5 of the divorce decree, the magistrate court could have determined that paragraph 5 was ambiguous and set it aside based on a mutual mistake.

Micki argues the district court did not err in affirming the magistrate court because, although Jennifer raises various specific issues, they all relate to whether the magistrate court disbursed the proceeds from the sale of the home as directed by paragraph 5 of the divorce decree, which it did. While Micki agrees with Jennifer that paragraph 5 is unambiguous, he disagrees with her interpretation, instead arguing the magistrate court and the district court, on intermediate appeal, correctly interpreted paragraph 5 and the amount awarded to each party is consistent with the divorce decree.

At the settlement hearing just prior to the trial, Jennifer's attorney outlined the stipulation as it related to the marital home as follows:

That property is going to be sold with a mutually-agreed-upon realtor at a mutually-agreed-upon price. Jennifer is going to receive the first [$1,100,000.00] from the sale of that property. If the sum of [$1,100,000.00] is not received by Jennifer from the sale, then Mr. Tiegs is going to make up any deficiency within 60 days thereafter.

Mr. Tiegs is going to receive the balance of the sale proceeds, after payment of the costs of sale and payment of the income taxes on the sale. It is anticipated there's going to be some capital gains taxes. He is going to be responsible for paying those and that's going to be included as the debt.

However, to the extent that after payment of the capital gains taxes and after payment of the costs of sale, any amount above the [$200,000.00], and that's after Jennifer receives her [$1,100,000.00], is going to be divided equally. So, essentially, the way this works: She's going to get [$1,100,000.00], Mr. Tiegs is going to be responsible for the capital gains taxes, he's going to receive the next [$200,000.00]. Anything received above that [$200,000.00] is going to be divided equally between the parties.

Although joint exhibit 1 was presented to the magistrate court when the parties placed the oral stipulation on the record, there were changes to the exhibit. Those changes are reflected in the divorce decree. Paragraph 5 of the divorce decree is very similar, but not identical, to the language of paragraph 5 of joint exhibit 1. Paragraph 5 of the divorce decree reads:

The real property identified as 3246 E. Windsong Dr., Boise, Idaho 83712, shall be sold with a mutually agreed upon realtor at a mutually agreed upon price. [Jennifer] shall be awarded the initial $1,100,000.00 of the sales proceeds[.] If the sum of $1,100,000.00 is not received by [Jennifer] from the sale, [Micki] shall pay her the deficiency within 60 days of the sale. [Micki] shall receive the balance of the sale proceeds AFTER payment of costs of sale and payment of income and/or capital gains taxes on the sale (for which [Micki] is responsible); provided, however, any amount above $200,000.00 payable to [Micki] shall be divided equally between the parties. The Court shall retain jurisdiction over the sale and disposition of sale proceeds and effectuate the terms of this provision.

Because the parties could not agree on the disbursement of the sale proceeds, Micki filed a motion to enforce the divorce decree. After hearing argument on the motion to enforce, the magistrate court issued its memorandum decision and order. First, the magistrate court concluded, "The sale proceeds and capital tax should be paid from Micki's separate funds." The magistrate court then agreed with the parties that the language of paragraph 5 of the divorce decree was clear and unambiguous. The magistrate court explained that paragraph 5 guaranteed Jennifer $1,100,000.00 regardless of the sale price of the home. If there were no remaining proceeds after Jennifer received her $1,100,000.00, then Micki was required to pay the costs of the sale and the capital gains taxes from some other source. If, however, there were proceeds remaining after

Jennifer was paid $1,100,000.00, then those additional funds would be used to cover the costs of the sale and the capital gains taxes. After those expenses were paid, if there were any remaining funds, Micki would receive up to $200,000.00. Any remaining balance after Micki received $200,000.00 would be divided equally between Jennifer and Micki. The magistrate court set forth the calculations as follows:

> The home sold for $2,750,000.00. There was an overpayment of the HOA dues and, therefore, the total credits were $2,750,166.03. The total costs of the sale of the home amounted to $1,069,751.44 as outlined below and consistent with the Venture Closing Costs Settlement Paper.

| | |
|---|---:|
| Mortgage Payoff | $885,981.46 |
| County Taxes | $5.01 |
| County Taxes | $10,974.92 |
| Keller Williams Commission | $82,500.00 |
| Silvercreek Commission | $82,500.00 |
| Owner's Title Insurance | $6,550.05 |
| Venture Title Closing Fee | $650.00 |
| Wire Fee | $15.00 |
| Title Release Fee | $80.00 |
| Invoice Jennifer Tiegs | $495.00 |
| **TOTAL DEBIT** | **$1,069,751.44** |

The magistrate court then calculated the distribution of the proceeds as follows:

| | | |
|---|---|---|
| Sale of the Home - | $2,750,166.03 | |
| Minus Jennifer Guarantee - | $1,100,00.00 | |
| Total | | $1,650,166.03 |
| Minus Cost of Sale of Home | $1,069,751.44 | |
| Total | | $ 580,414.59 |
| Minus Capital Gains Tax | $ 183,360.00 | |
| Total | | $ 397, 054.59 |
| Minus [Micki's] Portion | $ 200,000.00 | |
| **Total** | | **$ 197, 054.59** |

The district court, on intermediate appeal, affirmed the magistrate court. The district court noted that the term "sale proceeds" was a clerical error and should be corrected to "costs of sale," but the error did not affect the outcome of the appeal. After acknowledging Jennifer's additional arguments, the district court determined that the issue was whether the magistrate court distributed the proceeds from the sale of the marital home in accordance with paragraph 5 of the divorce

6

decree. The district court referenced the transcript of the settlement hearing and concluded that the magistrate court did not err in deducting the costs of the sale from the proceeds of the sale because "Nothing in the oral stipulation indicates that [Micki] was responsible for paying all the costs of sale." Next, the district court concluded that, "The magistrate court deducted the costs of sale and estimated capital gains tax from the total proceeds, treating the capital gains tax as community debt by deducting the estimated amount from the total proceeds prior to distribution." The district court noted that the magistrate court's decision regarding the capital gains tax "may have been grounds for reconsideration based on an erroneous interpretation of the parties' agreement." However, the district court concluded that while the motion to reconsider was pending, Jennifer entered into a stipulation, which was then incorporated into an order, and states:

> 1. From the proceeds of the sale of the Windsong property, the funds of which are held in [Jennifer's] attorney trust account, the amount of [$183,360.00] shall be provided to [Micki's] attorney and shall be held in the [law firm's] trust account. The funds shall only be released for payment, directly from [Micki's] attorney to the IRS and State of Idaho for payment of capital gains taxes.

The district court cited to the transcript of this hearing wherein Jennifer's counsel acknowledged the stipulation regarding the capital gains tax, and stated, "[Micki's counsel] and I, despite our disagreements, did at least work that issue out so that that would be solved." Thus, the district court held that it would not reverse the magistrate court on the capital gains tax issue because Jennifer could not "complain of errors one has acquiesced in or invited."

On appeal, Jennifer argues the district court erred in applying the invited error doctrine and in affirming the magistrate court's order on the motion to enforce the divorce decree. Micki argues the district court did not err. We hold the district court erred in applying the invited error doctrine and in affirming the magistrate court's order on the motion to enforce the divorce decree.

The district court erred in its application of the invited error doctrine. An invited error is "an error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling." *Taylor v. McNichols*, 149 Idaho 826, 833, 243 P.3d 642, 649 (2010). "The purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting a trial court to take action, from later challenging that decision on appeal." *State v. Barr*, 166 Idaho 783, 786, 463 P.3d 1286, 1289 (2020). Jennifer argues she did not "prompt" or "encourage" the magistrate court to disburse the proceeds of the sale of the home in contravention of paragraph 5 of the decree and award Micki $298,527.30. We agree. Jennifer contested Micki's interpretation of paragraph 5 of the divorce

7

decree and argued that Micki was responsible for paying the costs of the sale and the capital gains tax from his separate property. When the magistrate court treated the expenses as community debt, Jennifer filed a motion to reconsider. After the magistrate court awarded those funds to Micki and Micki requested them from Jennifer, Jennifer released the money, but only to Micki's attorney's trust account because she still disputed the amount Micki was to receive. Jennifer's compliance with the court order and release of those funds to Micki did not constitute invited error. *See Robirds v. Robirds*, 169 Idaho 596, 605, 499 P.3d 431, 440 (2021) (holding that attempting to make the best of an adverse ruling that a party earlier sought to avoid is a pragmatic legal strategy that does not constitute a waiver of earlier arguments and cannot be construed as consent, acquiescence, or invited error). Jennifer's willingness to comply with a court order but continue to challenge the amount Micki received is the same type of pragmatic legal strategy recognized in *Robirds*. Jennifer did not invite any error, and the district court erred in finding otherwise.

Turning to the merits of Jennifer's claim, the first issue that must be resolved is which expenses Micki is required to pay; we look to the language of paragraph 5 of the divorce decree for the answer to this question. The rules of construction of contracts apply equally to the interpretation of divorce decrees. *DeLancey v. DeLancey*, 110 Idaho 63, 65, 714 P.2d 32, 34 (1986). If the language of the decree is clear and unambiguous, determination of its meaning and legal effect is a question of law upon which this Court exercises free review. *Id.* If, on the other hand, the language of the decree is reasonably susceptible to conflicting interpretations, it is considered ambiguous, and the determination of its meaning is a question of fact. *Id.* "A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical. Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact." *Phillips v. Gomez*, 162 Idaho 803, 807, 405 P.3d 588, 592 (2017) (quoting *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010)).

Both the magistrate court and the district court concluded paragraph 5 was clear and unambiguous. As to which expenses Micki was responsible for, the district court concluded that the decree of divorce was unambiguous regarding Micki's responsibility for paying the capital gains tax because the parenthetical phrase "for which [Micki] is responsible" follows "payment of

8

income and/or capital gains tax." The district court reasoned: "The hyphenated[2] language 'for which [Micki] is responsible' comes after 'payment of income and/or capital gains tax,' in the decree. It clarifies that [Micki] is responsible to pay the capital gains tax." The district court then relied on the transcript of the hearing where the oral stipulation was placed on the record and concluded, "Nothing in the oral stipulation indicates that [Micki] was responsible for paying all the costs of sale." The district court then concluded that Micki was not responsible for the costs of the sale.

The district court erred in concluding that the phrase, "for which [Micki] is responsible," applied to the capital gains tax but not the costs of the sale. The error is that the full sentence analyzed by the district court is as follows: "[Micki] shall receive the balance of the sale proceeds AFTER payment of costs of sale *and* payment of income and/or capital gains taxes on the sale (for which [Micki] is responsible)." The word "and" in a legal context combines items. *Conjunctive/Disjunctive Canon*, BLACK'S LAW DICTIONARY (12th ed. 2024) (stating that, in a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives). Thus, the phrase, "for which [Micki] is responsible," would apply to both the "costs of sale" and the "payment of income and/or capital gains taxes on the sale" as written in paragraph 5 of the divorce decree. Moreover, the magistrate court did not find that Micki was not responsible for the costs of the sale, rather, and as discussed below, it found the opposite: that Micki was responsible for both the costs of the sale and the capital gains taxes from his separate funds. Thus, the district court erred in concluding that Micki was not responsible for the costs of the sale.

Related to that point, Jennifer argues Micki was obligated to pay those expenses from his separate funds. Jennifer argues there is a clerical error in the order to enforce that substantially changes the outcome of the magistrate court's decision. That error is contained in the last two sentences of the first paragraph. For context, the relevant parts of the paragraph are as follows:

> Both sides have submitted their arguments to this Court. Micki argues that the closing costs and capital gain taxes should come from the net proceeds from the sale of the community home after Jennifer is paid her [$1,100,000.00] and before he receives his $200,000.00. Jennifer argues that Micki must pay the *sale proceeds* and the capital gain tax from his separate funds and any excess of $1,200,000.00 should be divided equally. The *sales proceeds* and capital tax should be paid from Micki's separate funds.

---

[2] It appears the district court meant parenthetical language and not hyphenated language.

(Emphasis added.) Both parties agree that the term "sale proceeds" should be "costs of sale." The parties also agree that the costs of sale are $183,769.98, which is the total cost of the sale ($1,069,751.44) less the mortgage payoff ($885,981.46).

The district court seemed to agree with Micki, noting, "Arguably, [Micki] would be liable for any capital gains tax when he files his taxes." The district court also noted that, "The capital gains tax may have been grounds for reconsideration based on an erroneous interpretation of the parties' agreement." The "erroneous interpretation" referred to the magistrate court's decision to deduct the cost of the capital gains tax from the proceeds of the sale of the home. Nonetheless, the district court concluded that the typographical error would not have changed the outcome.

Jennifer argues the district court erred because the typographical error changes the outcome, and it makes clear that Micki should have to pay the costs of the sale and the capital gains taxes from his separate property. Thus, reasons Jennifer, the magistrate court's decision that the costs of the sale and the capital gains taxes should be treated as community debt and deducted from the proceeds of the sale, rather than as a separate debt that Micki was required to pay, is internally inconsistent. Micki argues that changing the language would not have affected the outcome because, despite this sentence, the magistrate court deducted the costs of the sale and the capital gains taxes from the proceeds of the sale.

The relevant sentence from paragraph 5 of the divorce decree is: "[Micki] shall receive the balance of the sale proceeds AFTER payment of costs of sale and payment of income and/or capital gains taxes on the sale (for which [Micki] is responsible); provided, however, any amount above $200,000.00 payable to [Micki] shall be divided equally between the parties." The sentence has multiple prepositional phrases. Prepositional phrases can act as an adjective modifying nouns or an adverb modifying a verb.[3] The words "after" and "of" are prepositions.[4] Thus, the part of the sentence beginning with the word "after" and ending with the word "responsible" is a prepositional phrase functioning as an adverb that also contains prepositional phrases acting as adverbs. The phrase "**after** payment **of** costs **of** sale and payment **of** income and/or capital gains taxes **on** the sale (**for** which [Micki] is responsible)" acts as an adverb of time because "**after**" modifies "shall

---

[3] Grammatical Functions of English Prepositions and Prepositional Phrases, https://linguisticsgirl.com/grammatical-functions-english-prepositions-prepositional-phrases/ (last accessed 8/12/25).

[4] Complete List of English Prepositions A-Z (Free PDF), https://www.learnenglishteam.com/complete-list-of-english-prepositions/ (last accessed 8/5/25).

receive" and describes *when* Micki receives his share of the proceeds, not *how* the proceeds are to be disbursed. Within that prepositional phrase are additional prepositional phrases: "**of** costs of sale," "**of** income and/or capital gains taxes," and "**for** which [Micki] is responsible." The prepositional phrase "**for** which [Micki] is responsible" modifies payment, and in this context is acting as an adverb describing who will be making the payment. Thus, based on the plain language of paragraph 5, Micki was responsible for the payment of the costs of the sale and the capital gains taxes. This conclusion is consistent with the magistrate court's conclusion in the order to enforce, which reads, as corrected, "The [*costs of sale*] and capital tax should be paid from Micki's separate funds." (Emphasis added.)

Although Micki argues this sentence was not the magistrate court's conclusion, but instead, a continued summary of Jennifer's argument, we disagree. The paragraph in the order to enforce reads, in relevant part, as follows:

> Micki argues that the closing costs and capital gain taxes should come from the net proceeds from the sale of the community home after Jennifer is paid her [$1,100,000.00] and before he receives his $200,000.00. Jennifer argues that Micki must pay the sale proceeds and the capital gain tax from his separate funds and any excess of $1,200,000.00 should be divided equally. The sale proceeds and capital tax should be paid from Micki's separate funds.

The structure of the paragraph gives one sentence to Micki's argument and one sentence to Jennifer's argument. Each of these sentences begins with either "Micki argues" or "Jennifer argues." The final sentence does not include any indication it is part of Jennifer's argument; instead, it states a conclusion. To include it as part of Jennifer's argument makes the final sentence redundant, as that is exactly how the magistrate court characterized Jennifer's argument in the sentence immediately preceding the final sentence. Based on this review, the magistrate court concluded that Micki was required to pay the costs of the sale and the capital gains taxes from his separate property.

However, the magistrate court's conclusion regarding Micki's responsibility is not reflected in the subsequent analysis and calculations regarding disbursement of the sale proceeds. The magistrate court found that paragraph 5 is not ambiguous and allocates the risk between the parties regarding the proceeds of the sale. The magistrate court provided a detailed analysis of paragraph 5 and a calculation showing the amounts each party would receive. The magistrate court concluded that Micki agreed to pay all of the capital gains tax on his taxes and that if the

home sold for less than what was needed to pay Jennifer the $1,100,000.00, Micki would still be responsible for paying the taxes. Despite this finding, the magistrate court later concluded that:

> The proceeds [of the sale] should cover [Micki's] tax obligation. If not, that will be Micki's problem once the money is divided to each side. Jennifer does not have to pay the capital gain tax on her taxes. This may mean that the 1099S form may have to be amended so that all of the sale proceeds go on Micki's form.

The district court affirmed the magistrate court's analysis and calculations on intermediate appeal. The district court erred because the magistrate court incorrectly assigned the costs of sale and capital gains tax as a community debt rather than Micki's separate responsibility, as required by the clear and unambiguous language of paragraph 5 of the divorce decree.

We agree with the magistrate court and the district court that paragraph 5 of the divorce decree is clear and unambiguous:

> The real property identified as 3246 E. Windsong Dr., Boise, Idaho 83712, shall be sold with a mutually agreed upon realtor at a mutually agreed upon price. [Jennifer] shall be awarded the initial $1,100,000.00 of the sales proceeds[.] If the sum of $1,100,000.00 is not received by [Jennifer] from the sale, [Micki] shall pay her the deficiency within 60 days of the sale. [Micki] shall receive the balance of the sale proceeds AFTER payment of costs of sale and payment of income and/or capital gains taxes on the sale (for which [Micki] is responsible); provided, however, any amount above $200,000.00 payable to [Micki] shall be divided equally between the parties. The Court shall retain jurisdiction over the sale and disposition of sale proceeds and effectuate the terms of this provision.

If, for purposes of conciseness, the prepositional phrases described above are removed, the sentence reads: "[Micki] shall receive the balance of the sale proceeds . . . ; provided, however, any amount above $200,000.00 payable to [Micki] shall be divided equally between the parties." The language makes clear that once Jennifer receives her $1,100,000.00, Micki receives $200,000.00, and any amount remaining is divided equally between Micki and Jennifer. Micki would then be responsible for paying the costs of sale and the capital gains taxes from his share of the proceeds.

Given the clear and unambiguous language of paragraph 5, the magistrate court erred in requiring the community to pay for those expenses and the district court erred in affirming the magistrate court's order. Instead, the disbursement of the proceeds should have been as follows:

| | |
|---|---|
| Sale of the Home - | $2,750,166.03 |
| Minus Jennifer Guarantee - | $1,100,00.00 |
| Total | $1,650,166.03 |
| Minus Mortgage Payoff - | $ 885,981.46 |

12

| | |
|---|---|
| Total | $ 764,184.57 |
| Minus Micki's Portion - | $ 200,000.00 |
| Total | $ 564,184.57 |
| Dividend shared equally | $ 564,184.57÷2 |
| **Total** | **$ 282,092.28** |

Jennifer: $1,382,092.28

Micki: $482,092.28

From Micki's share, he is responsible for the costs of the sale in the amount of $183,769.98 and the capital gains taxes in the estimated amount of $183,360.00.

Because the magistrate court held that paragraph 5 was clear and unambiguous, it erred in determining those expenses should be paid from community funds and treated as a community debt. We reverse the district court's order, on intermediate appeal, affirming the magistrate court and remand this case to the magistrate court for further proceedings consistent with this opinion.

## IV.

## CONCLUSION

The district court, on intermediate appeal, erred in affirming the magistrate court because the magistrate court's memorandum decision and order regarding motion to enforce the divorce decree is internally inconsistent. We reverse the district court's order affirming the magistrate court's memorandum decision and order regarding the motion to enforce the divorce decree and remand this case to the magistrate court for further proceedings consistent with this opinion.

Judge LORELLO and Judge TRIBE, **CONCUR**.